(79 N. W. Rep. 880.)

---

THOMAS O'TOOLE, *et al. vs.* O. M. OMLIE, *et al.*

Opinion filed June 27, 1899.

**Mortgages of Real Estate in Form of Absolute Conveyances.**

On December 5, 1885, plaintiffs executed and delivered to defendant O. M. Omlie their deed of warranty of certain real estate owned by Thomas O'Toole. Later, and on February 1, 1887, plaintiffs executed and delivered to said defendant a quitclaim deed of the same land, which recited that the same was executed to perfect and make absolute the warranty deed. Both deeds were absolute on their face, and the same were duly recorded. *Held,* under the evidence, that both deeds were given as security, and the same were, as between the parties thereto, mere mortgages, and were not deeds of absolute conveyance.

**Possession Notice to Purchaser of Rights of Occupant.**

Subsequently, and in December, 1895, and while the plaintiffs were residing upon the land and had the exclusive and actual possession thereof, said defendant O. M. Omlie and his wife conveyed the land to the defendant David Lane by deed of warranty, which deed was duly recorded. *Held,* under the evidence, that the defendant Lane purchased with constructive notice of the plaintiffs' rights in the premises, and that Lane's estate and title in the land are subject and subordinate to the rights and equities of the plaintiffs.

**Accounting Review on Appeal.**

Under the evidence, the Court is unable to determine the state of the account as between plaintiffs and the defendant Omlie, and, accordingly, *held,* that the matter of the accounting asked for by the plaintiffs is not passed upon or determined in this action, and the same is therefore left open for future determination.

Appeal from District Court, Pembina County; *Sauter,* J.

Action by Thomas O'Toole and Ann O'Toole against O. M. Omlie and David Lane, to have an instrument in form of a quitclaim deed executed by the appellants to O. M. Omlie and covering certain

lands in Pembina county, declared to be a mortgage, also for an accounting as against O. M. Omlie, and to have a deed from the defendant Omlie to defendant David Lane set aside. Judgment was given for defendants, and plaintiffs appeal.

Reversed.

*George A. Bangs* and *W. J. Kneeshaw,* for appellants.

The quitclaim deed given by appellants February 1st, 1897, was in fact a mortgage, because as shown by the evidence, the debt at the time of the transfer continued to exist thereafter. 1 Jones on Mtgs. 325; 3 Pom. Eq. Jur. § 1195; 2 Story Eq. Jur. 1018; *Voss* v. *Eller,* 7 Western Reptr. 361; *McMillan* v. *Bissell,* 5 Western Reptr. 706; *Huscheon* v. *Huscheon,* 12 Pac. Rep. 410; *Turpie* v. *Lowe,* 15 N. E. Rep. 834; *Kraemer* v. *Adelsberger,* 25 N. E. Rep. 859; *Dunton* v. *McCook,* 61 N. W. Rep. 977; *Keithley* v. *Wood,* 42 Am. St. Rep. 265; *Campbell* v. *Dearborn,* 12 Am. Rep. 671; *Riley* v. *Stan,* 67 N. W. Rep. 187. The great inequality between the value of the property conveyed and the price alleged to have been paid for it shows that it was intended as security only. 1 Jones, Mtgs. 329; *Cobb* v. *Day,* 17 S. W. Rep. 323; *Ferguson* v. *Bond,* 20 S. E. Rep. 591; *Gilchrist* v. *Beswick,* 10 S. E. Rep. 371; *Turpie* v. *Lowe,* 15 N. E. Rep. 834. The continued possession of the lands by plaintiffs is significant. 1 Jones on Mtgs. 328. The grantors continued to pay taxes and interest on the loan. *Kreamer* v. *Adelberger,* 25 N. E. Rep. 859; *Dunton* v. *McCook,* 61 N. W. Rep. 977. And understood the transfer to be as security only. *Cobb* v. *Day,* 17 S. W. Rep. 323. That it is competent to prove by parole that a deed absolute on its face was in fact a mortgage and to illustrate many of the circumstances controlling the determination of such cases, see *Mears* v. *Strobach,* 40 Pac. Rep. 621; *Clark* v. *Woodruff,* 51 N. W. Rep. 357; *Lounsberry* v. *Norton,* 22 Atl. Rep. 153; *Ray* v. *Tatum,* 72 Fed. Rep. 112; *Thorne* v. *Jay,* 45 Pac. Rep. 642; *Montgomery* v. *Beecher,* 31 Atl. Rep. 451; *Williams* v. *Chambers,* 26 S. W. Rep. 270; *Campbell* v. *Freeman,* 34 Pac. Rep. 113; *Robinson* v. *Bank,* 3 S. W. Rep. 656; *Jackson* v. *Lynch,* 21 N. E. Rep. 580; *Snow* v. *Pressy,* 20 Atl. Rep. 78; *Shields* v. *Russell,* 20 N. Y. Supp. 909; *McCauley* v. *Smith,* 30 N. E. Rep. 997. When on parole evidence it is doubtful whether the conveyance should be regarded by a court of equity as an absolute deed or as a mortgage the court will incline to hold it as being a mortgage. *Van Gilder* v. *Hoffman,* 22 W. Va. 1; *Gilchrist* v. *Beswick,* 10 S. E. Rep. 271; *Ferguson* v. *Bond,* 20 S. E. Rep. 591. If this conveyance was not a mortgage it operated to transfer or release the equity of redemption without the passing of any new consideration and with out any consideration except the satisfaction of the antecedent debt. In such case the release will only be sustained when it is bona fide, that is in all respects fair and for adequate consideration. *Ford* v. *Olden,* L. R. 3 Eq. Cas. 413; *Holdrige* v. *Gillespie,* 2 Johns. Ch. 23; *Baugher* v. *Merryman,* 32

Md. 192; *Linilell* v. *Liford,* 72 Me. 283; *Odell* v. *Montross,* 68 N. Y. 504; *Niggler* v. *Maurin,* 24 N. W. Rep. 369; *Marshall* v. *Thompson,* 39 N. W. Rep. 309; *Peugh* v. *Davis,* 24 L. Ed. 775; 6 Otto 332. The defendant Lane by his answer relies upon the defense that the instrument in question was an absolute deed. He cannot occupy the attitude of purchaser without notice and in good faith for the reason that this is an affirmative defense and should have been pleaded and proven. *Holdsworth* v. *Shannon,* 113 Mo. 508; 35 Am. St. Rep. 719; *Frost* v. *Beckman,* 1 Johns. Ch. 288; *Everts* v. *Agnes,* 4 Wis. 356; Story's Eq. Pl. § § 28, 806 and 852; *Johnson* v. *Toulmin,* 52 Am. Dec. 212; *Cummings* v. *Coleman,* 62 Am. Dec. 402; *Baynard* v. *Norris,* 46 Am. Dec. 647; *Rover Iron Co.* v. *Trout,* 5 Am. St. Rep. 285; *Webber* v. *Rothchild,* 15 Pac. Rep. 650; *Moshier* v. *Knox College,* 32 Ill. 155; *Minor* v. *Willoughby,* 3 Minn. 225; *Jewett* v. *Palmer,* 7 Johns. Ch. 64; *Padgett* v. *Lawrence,* 10 Paige Ch. 170; *Wood* v. *Raburn,* 22 Pac. Rep. 521; *Eversdon* v. *Mayhue,* 3 Cal. 641; *Nautz* v. *McPherson,* 18 Am. Dec. 216; *Blake* v. *Jones,* 21 Am. Dec. 530; *Williams* v. *Shelley,* 37 N. Y. 375; *Richards* v. *Snyder,* 6 Pac. Rep. 186; *Byers* v. *Fowler,* 54 Am. Dec. 271; *Bryan* v. *Torney,* 21 Pac. Rep. 725; *Boone* v. *Chiles,* 10 Pet. 177; 6 L. Ed. 388; *Buchanan* v. *Wise,* 44 N. W. Rep. 461; *Hume* v. *Franzen,* 34 N. W. Rep. 490; *Rush* v. *Mitchell,* 32 N. W. Rep. 367; *Throckmorton* v. *Ryder,* 42 Ia. 84; *Berry* v. *Whitney,* 40 Mich. 65; *Lettson* v. *Reed,* 45 Mich. 27; *Mann* v. *Falcon,* 25 Tex. 271; *Landers* v. *Bolton,* 26 Cal. 393; *Long* v. *Dollarhide,* 24 Cal. 218. The deed from Omlie to Lane given in December, 1895, was void because the land was in possession of O'Toole claiming under a title adverse to Omlie. § 681 Civil Code, 1877; § 3303 Comp. Laws. The continued possession of the land by O'Toole after his formal conveyance of the legal title is a fact in conflict of the legal effect of his deed and is presumptive evidence that he still retained an interest in the premises and was sufficient to put Lane on inquiry and subject him to the rights of the party in possession. *Lipp* v. *Ry. Co.,* 40 N. W. Rep. 129; *Daniels* v. *Hester,* 7 S. E. Rep. 65; *Phalen* v. *Brady,* 1 N. Y. Supp. 626; *Hottenstein* v. *Larch,* 104 Pa. St. 454; *Boyer* v. *Chandler,* 32 L. R. A. 113; *Brook* v. *Bordner,* 125 Pa. St. 407; *Groff* v. *Ramsey,* 19 Minn. 44; *Palmer* v. *Bates,* 22 Minn. 532; *New* v. *Wheaton,* 24 Minn. 406; *Brinser* v. *Anderson,* 6 L. R. A. 205; *Gale* v. *Shillick,* 29 N. W. Rep. 661; *Peasley* v. *McFadden,* 10 Pac. Rep. 179; *Lambert* v. *Weber,* 47 N. W. Rep. 251; *Pell* v. *McElroy,* 36 Cal. 268; *Toman* v. *Bell,* 15 S. W. Rep. 886; *New* v. *Wheaton,* 24 Minn. 406; *Groff* v. *Bank,* 50 Minn. 234; *Knapp* v. *Bailey,* 1 Am. St. Rep. 295; *Brinkman* v. *Jones,* 44 Wis. 498; *Grimstone* v. *Carter,* 3 Paige Ch. 420; 1 Jones, Mtgs. 548.

*Bosard & Bosard,* for respondents.

In the absence of an allegation of fraud, accident or mistake, the terms of the deed could not be altered or explained by parole. 1

Rice, Ev. 259; *Osborne* v. *Hendrickson,* 7 Cal. 282; *Kritzen* v. *Mills,* 9 Cal. 22; *Aud* v. *Magruder,* 10 Cal. 282; *Richardson* v. *Scott,* 22 Cal. 150; *Ward* v. *McNaughton,* 43 Cal. 159; *Washabaugh* v. *Hall,* 56 N. W. Rep. 82; *Knudson* v. *Grand Council,* 63 N. W. Rep. 911; *Deering & Co.* v. *Russell,* 5 N. D. 319; *Northwestern Fuel Co.* v. *Bruns,* 1 N. D. 137; *Plano Mfg. Co.* v. *Root,* 3 N. D. 165; *National German Bank* v. *Lang,* 2 N. D. 66; *Thompson* v. *McKee,* 5 Dak. 172; *Dean* v. *Bank,* 6 Dak. 222; *Schmidtz* v. *Mining Co.,* 67 N. W. Rep. 618; *Strunk* v. *Smith,* 66 N. W. Rep. 926.

WALLIN, J. This action is brought to remove an alleged cloud upon the title to certain real estate described in the complaint, and situated in the County of Pembina, and upon which plaintiffs have at all times in question resided. Plaintiffs joined in the execution of two deeds of conveyance of the land to the defendant O. M. Omlie, both of which deeds were delivered and recorded. The first was a deed of warranty, made and delivered on December 5, 1885, and in which the defendant O. M. Omlie, the grantee, assumed and agreed to pay a pre-existing mortgage given by plaintiffs for $800, and which deed, it is conceded, was given as security for an indebtedness then due the grantee from said Thomas O'Toole. The other deed was delivered February 1, 1887, and was an ordinary quitclaim deed, except that it contained the following recital: "This deed is given for the purpose of perfecting and making absolute a trust warranty deed given by the first party on the 5th of December, 1885." Subsequent to the delivery of the quitclaim deed, the defendants O. M. Omlie and wife joined in a conveyance of the land by deed of warranty to the defendant Lane, which deed was dated December 4, 1895, and was recorded on the 14th day of the same month. The complaint alleges that defendant Lane received said last-mentioned deed with full knowledge of plaintiff' rights in and to the land. Plaintiffs allege that both of the said deeds to the defendant O. M. Omlie were, as between the parties, mere mortgages, and were given to secure an indebtedness due to said Omlie from said Thomas O'Toole; and plaintiffs ask that all of said deeds, including the deed to defendant Lane, be adjudged null and void, and declared to be clouds on plaintiffs' title. In effect, the complaint alleges that the indebtedness of Thomas O'Toole to O. M. Omlie, to secure which it is claimed that the two deeds were given to Omlie, has been fully paid; and the plaintiffs ask an accounting as between plaintiffs and O. M. Omlie, and aver a willingness to pay any possible balance found to be due from Thomas O'Toole to said O. M. Omlie, and secured by said deeds to him. The answer embodies a qualified general denial, and alleges that defendant Lane is a good-faith purchaser of the land. The answer admits the execution, delivery, and recording of all of said deeds, and admits and alleges that said warranty deed given December 5, 1885, was given and received as security, and

further alleges that said quitclaim deed was not given or received as security, but was an absolute deed, given to perfect and make absolute said warranty deed, to which it expressly refers. The answer further alleges that said quitclaim deed was given in payment for a debt of $900 then due from plaintiff Thomas O'Toole to the defendant Omlie. The action was tried in the District Court without a jury, and comes to this Court for a trial de novo. The District Court entered a judgment in favor of the defendants, adjudging, among other things: First, that the evidence did not enable the Court to make any accounting; second, that said first-mentioned deed (the deed of warranty given by plaintiffs to the defendant Omlie) was given as security only, and was, as between the parties thereto, a mere security; third, that said quitclaim deed given by plaintiffs to Omlie was not given or received as security, but the same was given as an absolute conveyance of the title to the land in question.

The case was submitted to this Court at the October term, 1898, and subsequently a decision was handed down. Upon plaintiffs' petition a rehearing was granted, and the case was again argued at the late March term. The reargument has led to a partial modification of the conclusions reached by this Court in its original decision. We adhere to our first view upon the question of an accounting as between the plaintiffs and the defendant Omlie. The evidence as to the amount of the indebtedness, as it stood when the quitclaim deed was delivered, is vague and unsatisfactory; and the evidence touching the condition of said account at the time of the trial is still more so, and is in fact wholly inadequate as a means of determining the true state of said account. We therefore shall attempt to make no accounting in this action, for the reason that the character of the evidence will not permit the Court to do so intelligently. The question of an accounting must, therefore, under the evidence in this record, necessarily be left for future investigation. In fact, this question has not been adjudicated either in the court below or in this Court, and the defendants have never offered a scintilla of evidence bearing upon this feature of the case.

But further investigation, and a more careful consideration of the evidence and of the law, has led the Court to change its views as to the character of the quitclaim deed or, rather, the purpose for which it was given and received. We are now of the opinion, and so hold, that said quitclaim deed was not intended to be an absolute deed of conveyance, as it purports on its face to be, but, on the contrary, as between the parties, the same was given and received as a mere security and mortgage. We cannot ascertain from the evidence the amount of the indebtedness then existing, which the quitclaim deed was given to secure, nor whether or not it was intended in part as a security for future advances to be made by Omlie to Thomas O'Toole; and therefore we shall limit our holding in this respect to the one single matter of the nature and objects of the instrument, and in so doing shall hold that the same was

given as security, and must be hereafter so construed as between the parties thereto. But such quitclaim deed is in form a deed of conveyance absolute on its face, and the same is therefore, as to strangers not in privity, a valid deed of absolute conveyance. It follows that the grantee named in the quitclaim deed received by it apparent authority to convey the land. Pursuant to such authority, Omlie and his wife, did by their deed of warranty convey the land in question to the defendant Lane. There is no evidence in the record tending to show that Lane actually knew that the quitclaim deed was given as a mere security, nor can this Court indulge any such presumption; but inasmuch as it appears that the plaintiffs were in the actual possession of the land, and resided thereon, when Lane purchased the same and received his deed of conveyance, it will follow that Lane had constructive notice of any rights which the plaintiffs had in the land, and received his deed with full notice and knowledge of such rights. It follows that Lane's title in and to the land in question is held subject to the plaintiffs' equities therein, whatever they may prove to be.

As has been seen, the unsatisfactory state of the evidence renders a final determination of the rights of the parties in the land impracticable in the present action, and we are further compelled to hold, under the statute controlling the action, that a new trial of the action cannot be accorded. Under these circumstances, we do not deem it advisable to elaborate upon the evidence, and have concluded not to do so, further than to point out certain features of the testimony which have operated to lead the Court to believe that the quitclaim deed from plaintiffs to Omlie was given as a mere security, and not as an absolute conveyance. We remark first that there is not a particle of evidence in the record tending to show any oral negotiations for a sale of the land. We regard this omission as being significant and important. Again, the evidence of Thomas O'Toole is emphatic that the quitclaim deed was asked for by Omlie as a security, and for that purpose only. This evidence was not denied or contradicted by Omlie, or by any witness in the case. If Omlie in fact bought the land outright, he was, we think, unaccountably remiss in not offering any oral evidence whatever tending to show the fact of such purchase. He saw fit, on the contrary, to stand on the recitals upon the face of the quitclaim deed, and did so despite the oral and documentary evidence offered by the plaintiff, strongly tending to show that the conveyance was in fact a mere security, and was so intended. It appears that at the time the quitclaim deed was executed and delivered the plaintiff Thomas O'Toole and his son Simon O'Toole executed two promissory notes, for $463.25 each, in favor of Omlie, and delivered the same to him; and the evidence has some tendency to show that the aggregate of the notes approximated the amount of O'Toole's indebtedness to Omlie at that time. In the absence of testimony

leading to a different conclusion, the inference is strong that the deed was given to secure the payment of the two notes, and was not given as an absolute conveyance. Again, it is conceded that Thomas O'Toole and his wife continued to reside upon the land after the delivery of the quitclaim deed, and were residing thereon at the time of the trial below,—a period of 12 years. This fact is also unexplained, and the same is, in our judgment, inconsistent with the theory of an absolute sale and conveyance of the land, and is all the more so when considered in connection with the undisputed testimony, showing that the plaintiff regularly paid the taxes on the land accruing after the execution and delivery of the quitclaim deed. The record is replete with testimony of financial transactions had between Omlie and O'Toole subsequent to the delivery of the quitclaim, and among such are receipts given to O'Toole by Omlie for moneys paid upon notes held by Omlie against O'Toole. Besides these items of testimony, other evidence in the record could be alluded to, having the same general tendency; but we deem it unnecessary to enlarge further upon the details of proof, but will only say that a most careful and repeated examination of the record has served to convince us that the evidence, when considered fairly, is sufficient to warrant the Court in holding that the quitclaim deed was a mere security, as between the parties. We concede, however, that there is some evidence pointing to a different conclusion. It cannot, however, be overlooked that the first deed given by the plaintiffs to Omlie, which on its face is an absolute deed of warranty, was given to secure an indebtedness of Thomas O'Toole to Omlie. This instrument operated to establish the relation of debtor and creditor, wherein the debt of the plaintiff Thomas O'Toole was secured by a mortgage given to defendant Omlie. This original transaction creates the relation of mortgagor and mortgagee, and it is elementary that under such circumstances a court of equity will exact from the creditor the utmost good faith in his subsequent dealings with the debtor with respect to the security involved. The following authorities are in point, as illustrating the jealousy with which a court of equity regards such transactions. Sedg. & W. Title Land, § 344; *Hyndman* v. *Hyndman,* 19 Vt. 10; *Niggeler* v. *Maurin,* 34 Minn. 118, 24 N. W. Rep. 369; *Odell* v. *Montross,* 68 N. Y. 499.

Our conclusion is that the judgment of the court below must be reversed, and we therefore direct the trial court to enter a new judgment, reversing its original judgment, and further adjudging, in substance, as follows: First, that said quitclaim deed described in the complaint, and given by the plaintiffs to defendant. Omlie, was given as a security, and that the same, as between the parties thereto, was a mortgage of the land described in the complaint, and was not an absolute conveyance of said land; second, that the estate and title of the defendant Lane in and to said land are subject and subordinate to the rights and equities of the plaintiffs therein, and that Lane took title with constructive notice of all of

plaintiffs' rights and equities in ·and to the land described in the complaint; third, that the matter of the account, as between the plaintiffs and the defendant Omlie, is not adjudicated or determined in this action, but, on the contrary thereof, the matter of the accounting is left open for future determination. The appellants will recover their costs and disbursements in this Court and in the court below. All the judges concurring.