## ALBERTINA KRAUSE v. HERMAN KRAUSE and John R. Jones.

### (151 N. W. 991.)

**Express contract — meeting of minds — proof must be satisfactory — necessary elements must be established — implied contract — state of dealings.**

1. To prove an express contract, one claiming thereunder must produce satisfactory evidence showing a meeting of the minds of the contracting parties as to the essential elements of such alleged agreement. If an implied contract is claimed, such a state of dealings must be shown that the law would imply such agreement. *Held:* The proofs in this case fall far short of what the plainest rules of evidence require.

**Relatives — transactions between — fiduciary relations — wrong or fraud — presumptions — evidence.**

2. While transactions between relatives or persons sustaining fiduciary relations will be closely scrutinized to see that no wrong is done, yet fraud, generally, is never presumed. The law presumes that all men are fair and honest, that their dealings are in good faith, and without intention to cheat, hinder, delay, or defraud others. *Held* that under the evidence in this case no fraud was shown.

**Mortgage — record owner of land — legal title — open possession — equitable rights — notice of — trust relation.**

3. J., who takes a mortgage upon land from H., the record owner of the legal title to land, which at all times was in the open, notorious, adverse, and exclusive possession of A., the owner of the equitable title, is charged with notice of all the rights of said equitable owner as well as of the relation of trustee sustained by H. *Held*, J. having made no inquiry in this case, his mortgage is not a lien, since H. gave said mortgage in violation of his trust relation.

**Trustee of land — right to sell same — liability — grantee — ratification — agency.**

4. H., being a trustee of land, had no right to sell the same, and in his deed attempt to fix the liability for the payment of his own debt to secure which he had given a mortgage in violation of his trust, upon the grantee in such deed; especially is this true when dealing with the agent of the equitable owner of said land, who knew nothing about the unlawful mortgage, and

who refused to ratify the act of her agent in taking such deed; said agent claiming no personal interest in said land.

**Owner of legal title — trustee — equitable owner — land sold by trustee — recovery.**

5. The owner of the legal title to land who holds the same as trustee can be compelled to redeem the same to the equitable owner.

**Equity — offer to do — deed — may demand — trust relation — must satisfy.**

6. Plaintiff, having at all times offered to do equity, can now demand a deed to be given her by her trustee, when she complies with all the demands against her growing out of such trust relations.

**Equities — adjustment of — district court — evidence — mortgage satisfied.**

7. The lower court required to take evidence and adjust equities, when a deed from H., the trustee, must be given and the mortgage improperly given to J. by H., the trustee, shall be deemed satisfied.

Opinion filed March 8, 1915.

Appeal from the District Court of Richland County, *Allen*, J.

Action to have a trust relation with reference to real property declared and to require a reconveyance of such property to plaintiff, and to have a decree by which a mortgage shall be adjudged not a lien.

Reversed.

Statement by POLLOCK, District Judge.

This appeal brings up the entire record of the court below. It was tried under the so-called "Newman act," and a new trial in this court is asked. The record covers 311 pages. The facts are many. Having read the entire record and made a grouping of the facts, it is found that but few are in dispute. The mortgages, judgments, liens, deeds, contracts, and other written documents speak for themselves. Disputes which have arisen are more concerning inferences and conclusions to be drawn from conceded or proved facts, rather than with reference to the facts themselves. Certain evidence was offered to which timely and proper objections were interposed. For example, evidence with reference to judgments given long after the transaction in question occurred, and which could have no bearing upon the case, has not been considered. The material facts are as follows: For the purpose of convenience reference hereafter will be made to Herman Krause, the defendant, as

Herman; John R. Jones, as Jones; Albertina Krause's husband, as John. On October 16, 1899, one Kinney entered into a contract with the plaintiff and her husband whereby he agreed to sell for $1,800, to them, the southwest quarter of 32—130—49. Possession was delivered to plaintiff and John April, 1, 1900. January 1, 1901, plaintiff and her husband Kinney all accrued interest and $30.65 on principal. Subsequently Kinney transferred the land to one Hankinson. A new contract was thereupon made between Hankinson, plaintiff and her husband. It was practically a continuation of the Kinney contract. This contract was not introduced in evidence, and cannot be found. Subsequently, and after a part of the purchase price had been paid to Hankinson, plaintiff and her husband assigned the contract to the defendant Herman, a brother of plaintiff's husband. Prior to the time this assignment was made, certain judgments had been taken against plaintiff and her husband, in the following order:

One dated October 11, 1899, in favor of August Brummund for $103.70; one dated December 3, 1899, in favor of August Bublits for $46.70; one dated May 4, 1901, in favor of W. E. Purcell for $832.-35; and one dated August 28, 1901, in favor of Otto Latzke for $543.-70. The one to Brummund was thereafter paid. Execution was issued on the Latzke judgment August 30, 1901 and returned wholly satisfied November 26, 1901. The land was sold under the Purcell judgment, but sold to Otto Latzke a subsequent judgment creditor. At the time these judgments were taken and indeed at all times mentioned in the complaint, the plaintiff and her husband were in the open, adverse, and exclusive possession of the land, holding and using the same as their own, and appropriating to their own use all the crops raised thereon. In about the year 1902 Herman went to live at the home of the plaintiff and her husband, and continued to make his home with them until the year 1905, when he left. During most of the time that Herman was residing with plaintiff, his son, a boy ten or twelve years of age, resided there also. Sometime after Herman went to live at the home of plaintiff, plaintiff and her husband assigned to him the so-called Hankinson contract. There is a dispute as to the exact date of this assignment. During all this time Herman was himself the owner of a quarter section of land near Hankinson. After the contract was made with Hankinson, certain of the proceeds of the crops raised on the land were ap-

plied in payment of the purchase price, so that in December, 1905, there were due on the contract $1,218. In the month of December, 1905, plaintiff and Herman applied to one Louis Fligelman, agent of T. Brokken, for a loan of $1,500 to be secured by mortgage on the land in question and another quarter concededly owned by Herman. The proceeds of this loan were to be used in paying the balance due on the Hankinson contract. The loan was made; the amount due Hankinson paid; the deed of the land was executed to Herman; $1,218 were paid Hankinson; a part of the loan was used by John in the payment of his debts, and the balance of $112.15 were turned over to plaintiff, who used the same as her own funds. Some confusion seems to arise in argument whether the land was sold on the Latzke or the Purcell judgment, but the fact remains that Latze became the owner of the land under a sheriff's deed, and the judgments of Purcell and Latzke were satisfied. The evidence shows that the judgments in favor of Latzke and Purcell had been duly docketed, executions were issued, and the land sold thereunder prior to the assignment of the Hankinson contract. A settlement was thereafter made with Latzke, who deeded the land to Herman by a deed dated March 6, 1906. An evident estrangement grew up between the brothers, and Herman left John's home. Herman then put a second mortgage upon the land for $300, out of which he paid Latzke $100, appropriating the balance to his own use. On December 18, 1905, Herman mortgaged the land to defendant Jones for $125. This mortgage was paid out of the proceeds of the $300 loan above mentioned. Plaintiff and her husband resided on a homestead adjoining the quarter in question, and used it, together with their homestead, as one farm. With the exception of one year, plaintiff has paid the taxes on the land. For that one year Herman paid them. Herman never paid any interest on either the $1,500 or the $300 mortgage. It was paid each year by the plaintiff. The $300 mortgage was foreclosed and redeemed by the plaintiff at a cost of more than $500. January 7, 1907, while plaintiff and her husband were in possession of the land, she claiming it as her own, farming it in the usual way and appropriating to her own use the crops grown thereon, Herman, without plaintiff's knowledge or consent, mortgaged the land to defendant Jones to secure the payment of $2,361.84, made up largely of antecedent debts owing by Herman to Jones. Nothing has been paid on that mortgage, neither principal nor interest. Jones

never paid any of the taxes levied against the land, nor any interest on prior mortgages. In the fall of 1907 negotiations were had between plaintiff and Herman, through one Grawe, for a reconveyance of the land to the plaintiff; Grawe through such conveyance to have paid to him a debt of Herman's of about $100. At the time of these negotiations, plaintiff had no knowledge of the existence of the mortgage from Herman to Jones, securing the payment of $2,361.84; and as soon as she became aware of the same and that the deed to Grawe had been made subject thereto, she refused to accept the deed. Grawe has never filed this deed for record, never asserted any rights thereon, and testified on the trial that he did not now and never had claimed anything himself under the deed. The relations between plaintiff and her husband and Latzke were unfriendly. Defendant alleges as one defense that he purchased the plaintiff's interest in the land outright, taking the same for an amount claimed to be due him for wages. At the time the assignment was made to him, he insists there was due him between $500 and $1,000. There is no evidence, however, of any definite contract with reference to wages, the amount or character of the same, or the relations existing between the parties with reference thereto, except that a further claim was made by defendant that they farmed the land in common, while it is asserted upon the part of the plaintiff that Herman was simply living with them, could come and go as he pleased; was in no sense a hired man, and that the brothers were practically living in a state of mutual accommodation, each helping the other upon farms which they owned respectively. Defendant, as a second defense, insists that the assignment to Herman was also made in fraud of creditors and especially the creditor Latzke; among other things, calls attention to the fact that on January 5, 1902, plaintiff's husband filed a voluntary petition in bankruptcy, was adjudged a bankrupt, and discharged as such December 3, 1903. The judgment of Latzke was scheduled in that proceeding. Defendant claims that the assignment of the Hankinson contract was in March, 1902, but was dated back so as to appear to have been made before the Latzke judgment. The evidence as to dating back is very unsatisfactory, and was brought out from Herman by direct questions of his counsel. The fact is denied, and the testimony will hardly warrant the court in finding, that such assignment was dated back. Otto Latzke having bought the land, together with the homestead

under the Purcell judgment, action was brought against him by John to quiet his, John's title, as against the record of the sheriff's deed, so far as the homestead quarter was concerned; that the judgment of Purcell was not a lien upon his homestead; and such title was so quieted in John.

*W. S. Lauder* and *Purcell, Divet, & Perkins,* for appellant.

It is an elementary principle of law that a conveyance will be deemed fraudulent as to creditors only when it in some way operates to hinder, delay, or defraud such creditors.

Fraud consists of some unlawful conduct that operates prejudicially upon the rights of others. Bump, Fraud. Conv. p. 19; Bates v. Callender, 3 Dak. 259, 16 N. W. 506; First Nat. Bank v. North, 2 S. D. 480, 51 N. W. 96; Kvello v. Taylor, 5 N. D. 76, 63 N. W. 889; Dalrymple v. Security Improv. Co. 11 N. D. 65, 88 N. W. 1033; Kettleschlager v. Ferrick, 12 S. D. 455, 76 Am. St. Rep. 623, 81 N. W. 889; Commercial State Bank v. Kendall, 20 S. D. 314, 129 Am. St. Rep. 936, 106 N. W. 53.

Plaintiff's interest in the property was assigned to Herman, to be held by him *merely in trust, and not as his own.* The assignment, therefore would not and could not in law be fraudulent. Bump, Fraud. Conv. p. 453; Wait, Fraud. Conv. p. 404; Teal v. Scandinavian-American Bank, 114 Minn. 435, 131 N. W. 486; Livingston v. Ives, 35 Minn. 55, 27 N. W. 74; Over v. Carolus, 171 Ill. 552, 49 N. E. 514; Halloran v. Halloran, 137 Ill. 100, 27 N. E. 82; Dyer v. Homer, 22 Pick. 253; Clemens v. Clemens, 28 Wis. 637, 9 Am. Rep. 520; Harvey v. Varney, 98 Mass. 118; Fairbanks v. Plackington, 9 Pick. 96; Drinkwater v. Drinkwater, 4 Mass. 354; Oriental Bank .v. Haskins, 3 Met. 332, 37 Am. Dec. 140; Crowninshield v. Kittridge, 7 Met. 520; Nichols v. Patten, 18 Me. 231, 36 Am. Dec. 713; Andrews v. Marshall, 43 Me. 272; Moore v. Meek, 20 Ind. 484; Springer v. Drosch, 32 Ind. 486, 2 Am. Rep. 356; Hoeser v. Kraeka, 29 Tex. 450; Davis v. Ranson, 26 Ill. 105; Lawton v. Gordon, 34 Cal. 36, 91 Am. Dec. 670; Jones v. Rahilly, 16 Minn. 320, Gil. 283; Gowan v. Gowan, 30 Mo. 472; Smith v. 49 & 56 Quartz Min. Co. 14 Cal. 242; Brooks v. Martin, 2 Wall. 70, 17 L. ed. 732; Taylor v. Weld, 5 Mass. 109; Dale v. Harrison, 4 Bibb, 65; Clapp v. Tirrell, 20 Pick. 249; Gillespie v. Gillespie, 2 Bibb, 89;

Sherk v. Endress, 3 Watts & S. 255; Thompson v. Moore, 36 Me. 47; Burgett v. Burgett, 1 Ohio, 469, 13 Am. Dec. 634; Chapin v. Peace, 10 Conn. 69, 25 Am. Dec. 56; Randall v. Phillips, 3 Mason, 378, Fed. Cas. No. 11,555; Byrd v. Curlin, 1 Humph. 466; Crawford v. Osmun, 70 Mich. 561, 38 N. W. 573; Irwin v. Longsworth, 20 Ohio, 581; Ballard v. Jones, 6 Humph. 455; Still v. Buzzell, 60 Vt. 478, 12 Atl. 209.

Open, notorious and adverse possession of real property is notice to the world of every right or interest owned or held by the person in possession—legal or equitable—or whether such right is an interest in the land itself, or a mere right of possession or to rents and profits. Hedlin v. Lee, 2 N. D. 495, 131 N. W. 390; O'Toole v. Omlie, 8 N. D. 444, 79 N. W. 849; 48 Century Dig. p. 775, § 540.

*Dan R. Jones* and *Wolfe & Schneller,* for respondents.

The original transfer of title to the land involved, to Herman Krause, was in fraud of the creditors of the plaintiff and her husband, John Krause. They transferred the land to Herman Krause with the expectation and the hope that he could and would settle certain claims against them for a less or reduced amount. This, in itself, was a fraud. Rev. Codes 1905, § 6637, Comp. Laws 1913, § 7220.

Latze's claim, the one they were trying to get settled at a reduced amount, was in *judgment,* and that judgment was *conclusive* of the amount of the debt and of its validity. Salemonson v. Thompson, 13 N. D. 182, 101 N. W. 320; Soly v. Aasen, 10 N. D. 108, 86 N. W. 108; Greer v. Wright, 52 Am. Dec. 111 and note, 6 Gratt. 154; Minnesota Thresher Mfg. Co. v. Schaack, 10 S. D. 511, 74 N. W. 445; Ferguson v. Kumler, 11 Minn. 104, Gil. 62; Pabst Brewing Co. v. Jensen, 68 Minn. 293, 71 N. W. 384; Burgess v. Simonson, 45 N. Y. 225; Goodnow v. Smith, 97 Mass. 69; Mosgrove v. Harris, 94 Cal. 162, 29 Pac. 490.

It is immaterial that a grantee in a voluntary deed knew nothing of the fraud on the part of a grantor. Peek v. Peek, 77 Cal. 106, 1 L.R.A. 185, 11 Am. St. Rep. 244, 19 Pac. 227; Lee v. Figg, 37 Cal. 328, 99 Am. Dec. 271.

A conveyance with intent to defraud creditors is void though there may have been full and valuable consideration paid therefor. Swinford v. Rogers, 23 Cal. 233; Ridell v. Shirley, 5 Cal. 488; Salemonson v.

Thompson, 13 N. D. 182, 101 N. W. 320; Salisbury v. Burr, 114 Cal. 451, 46 Pac. 270; Lockren v. Rustan, 9 N. D. 43, 81 N. W. 60.

A conveyance, though void as to creditors, vests the legal title in the grantee, and a judgment against such grantee is a lien upon the land so conveyed. Faber v. Wagner, 10 N. D. 287, 86 N. W. 963; Kerr's Code (Cal.) § 3439, note 2; First Nat. Bank v. Eastman, 144 Cal. 487, 103 Am. St. Rep. 95, 77 Pac. 1043, 1 Ann. Cas. 626; Jones v. Jones, 20 S. D. 632, 108 N. W. 23; Sickman v. Lapsley, 15 Am. Dec. 599, note; Carll v. Emery, 1 L. R. A. 618, note; Bigby v. Warnock, 115 Ga. 385, 57 L.R.A. 754, 41 S. E. 622; Gilliland v. Fenn, 9 L.R.A. 415, note; Lawton v. Gordon, 34 Cal. 36, 91 Am. Dec. 670; Mc-Minn v. Whelan, 27 Cal. 300; Robinson v. Blood, 64 Kan. 290, 67 Pac. 842; Durand v. Higgins, 67 Kan. 110, 72 Pac. 567; Poppe v. Poppe, 114 Mich. 649, 68 Am. St. Rep. 503, 72 N. W. 612; Massi v. Lavine, 139 Mich. 140, 102 N. W. 665; Ratliff v. Ratliff, 102 Va. 880, 47 S. E. 1007; Flannery v. Coleman, 112 Ga. 648, 37 S. E. 878.

In such a case the title passes absolutely to the grantee or vendee, or to an innocent purchaser from such vendee. Robb v. Robb, — Tex. Civ. App. —, 41 S. W. 92; Shields v. Ord, — Tex. Civ. App. —, 51 S. W. 298; 9 Decen. Dig. Fraud. Conv. p. 1661, § 172; Brady v. Huber, 197 Ill. 291, 90 Am. St. Rep. 161, 64 N. E. 264; Edgell v. Smith, 50 W. Va. 349, 40 S. E. 402.

Where performance was impossible at the time of the suit, and plaintiff knew or was informed at that time of such impossibility, the court, on denying the equitable relief, will not retain the case for the purpose of awarding damages, but will leave him to his legal remedy. 36 Cyc. 747, and note 91; Knudtson v. Robinson, 18 N. D. 12, 118 N. W. 1051.

A grantee accepting a conveyance of land by a deed describing certain mortgages thereon, and expressly declaring that the conveyance was made subject thereto, is estopped thereby to question the validity of the mortgage. American Waterworks Co. v. Farmers Loan & T. Co. 20 C. C. A. 133, 36 U. S. App. 563, 73 Fed. 956; Freeman v. Auld, 44 N. Y. 50; De Wolf v. Johnson, 10 Wheat. 367, 6 L. ed. 343; Calkins v. Copley, 29 Minn. 471, 13 N. W. 904; Jones, Mortg. §§ 744, 1491, and cases cited; 35 Century Dig. title, Mortgages, col. 1310, § 773; 14 Decen. Dig. title Mortgages, p. 272, § 278.

A principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency. Rev. Codes 1905, Sec. 5788, Comp. Laws 1913, § 6356; Anderson v. First Nat. Bank, 4 N. D. 182, 59 N. W. 1029; Mechem Agency, §§ 314, 315, 484; National Bank v. Merchants' Nat. Bank, 91 U. S. 92, 23 L. ed. 208; 16 Decen. Dig. § 145 (2) p. 1093, notes a, e,–i, and r; 40 Century Dig. Principal & Agent, 159, note e; Firestone v. Firestone, 49 Ala. 128.

POLLOCK, District Judge (after stating the facts as above). A vast difference exists between a *fact* and an *inference*. That John and wife may have deeded the land to Herman is a fact; the inference to be drawn from the act must be determined by the surrounding circumstances, coupled with the act. This is a trite statement, but one to be kept in mind in discussing the evidence in this case. The innumerable facts disclosed by the record are at first somewhat confusing, but if read accurately present very few conflicts. When discussing inferences, however, counsel became involved in hopeless contradictions. Two or three questions settled at the outset will, we think, tend to clarify the atmosphere. They refer to the character of the transactions between plaintiff, her husband, and Herman; the nature of the mortgage to Jones, and plaintiff's knowledge with reference to such transactions and mortgage.

(1) Did Herman take this land as security or payment for a debt? To substantiate this view of the case it would be incumbent upon defendant to show that there was a contract, either express or implied, entered into between the parties, before such a condition could follow. The testimony of Herman upon that point, if considering his claim that a debt was owing by implication for services performed, falls far short of what the plainest rules of evidence require of parties to support the existence of a contract, denied as it is in this case. No evidence appears as to the meeting of the minds of the parties upon the question of time of service; amounts paid or to be paid; efforts at settlement; demand for payment; in fact nothing beyond a guess or statement on Herman's part that there were owing him $500 to $1,000; while the evidence does show much to contradict the idea of there having been established a relationship of the parties, other than what frequently is found to exist between relatives, situated as Herman was at the time, being unmarried, and having the care of a boy upon his hands, and having land of his own

to cultivate. The fact that he had land elsewhere, and that there seemed to be a particularly friendly relation existing between the brothers at the time, negatives in a large degree Herman's claim that he had a contract for service, either express or implied. Indeed we are of the opinion that this contention is hardly the serious one made by the defendant. It would be wholly inconsistent with the other theory upon which he places so much reliance, and which is involved in the next proposition to which we will give our attention. If there is any unsatisfied obligation existing between Herman and his brother, that can be adjusted between them at a proper time and place. It is clear from the entire record in this case that the transfer of the property to Herman was not made in payment of or given as security for any such alleged obligation.

(2) Did the plaintiff and her husband assign the Hankinson contract to Herman with intent to hinder, delay or defraud their creditors? It perhaps will be conceded, as claimed by appellant, that "fraud consists of unlawful conduct that operates prejudicially upon the rights of others. To defraud is to withhold from another that which is justly due him, or to deprive him of a right by deception or artifice. A fraud upon the creditors consists in the intention to prevent them from recovering their just debts, by an act which withdraws the property of the debtor from their reach. There can be no actual fraud without a dishonest intent; but fraud does not consist in mere intent, but in intention carried out by hurtful acts. It consists of conduct that operates prejudicially on the rights of others, and is so intended." Bump, Fraud. Conv. p. 19.

Doubtless the general rule will also be conceded that fraud is never presumed, but must be affirmatively proved. On the contrary the presumption, if any, is in favor of innocence, and the burden falls on him who asserts fraud, to establish it by proving every material element constituting such fraud by a preponderance of the evidence. 20 Cyc. 108. The law presumes that all men are fair and honest, that their dealings are in good faith, and without intention to disturb, cheat, hinder, delay, or defraud others; where a transaction called in question is equally capable of two constructions—one that is fair and honest and one that is dishonest—then the law is that the fair and honest construction must prevail and the transaction called in question must be presumed to be fair and honest. Schroeder v. Walsh, 120 Ill. 411, 11 N. E. 70; Hill

v. Reifsnider, 46 Md. 555; Tompkins v. Nichols, 53 Ala. 197. It is, however, true that when persons are in a fiduciary relation with each other, or are relatives, the law requires their acts to be scrutinized very closely to see that no wrong has been done.

There seems to be a dispute in the evidence as to when plaintiff made assignment of the Hankinson contract to Herman, whether before or after the sheriff's deed to Latzke, which was given January 16, 1903, but there is no controversy that it was made after the sale on the judgment, January 13, 1902, which ripened into that deed. The sheriff's deed purports to convey all title and interest of "John Krause and Albertina Krause had on the 18th day of October, A. D. 1901, or at any time thereafter, or now has, in said land." While under the rule in the case of Cummings v. Duncan, 22 N. D. 534, 134 N. W. 712, Ann. Cas. 1914B, 976, the lien of the judgment would not attach to the equitable interest of plaintiff, yet, after the levy and sale, it would, and Latzke's rights at that time became fixed. Neither does it matter in this case whether Herman took his paramount legal title under the deed from Hankinson or the sheriff, his relation to the land as we conclude equitably considered must be determined by his agreements with plaintiff and her husband. Facing the question then, what evidence is there of fraud? It would seem that there is a vast distinction between *paying* and *preventing the payment* of what is owing another. It appears from the evidence that plaintiff, her husband, and Herman went to the office of one Gene Schuler, who acted as the scrivener, and while there, had a conversation with reference to the matter of this transaction.

Plaintiff gives her version of the conversation as follows:

Q. Just state what was said and why you made this assignment,—all about it?

A. I told Gene Schuler that I gave the contract to Herman Krause to settle with Otto Latzke, and make a deal with him about the trouble we had together so I could settle with him, and after he had settled for us he shall give me that back, and Schuler drawed the paper and we signed it, and then he asked him if he wanted to pay so we get an alright settlement between me and Krause and him, and if it is so that I gave John that land back again, and he says "I will."

Q. And what did Herman say to you?

A. He says, "I will."

Upon redirect examination Mrs. Krause testified:

I am Krause, John Krause my husband, and Herman was there, and I tell after we have this fixed up so he would make settlement with him, and he shall give that piece of land back to me, and he says he will.

Q. Who bought this land first?

A. I do.

Q. This is the contract, exhibit "C," is it not? (Exhibit "C" is the Kinney contract.)

A. Yes, that is it.

Q. Your name appears first in this?

A. My name.

Q. Did you make the bargain for the land?

A. Yes, I make the bargain.

John Krause testified upon redirect examination:

I talked it over with him (Herman) in Schuler's office.

Q. Who was the land to go back to?

A. To Mrs. Krause.

Q. That is your wife?

A. That is my wife.

While speaking in broken English, this statement is fully corroborated by the conceded testimony of the scrivener, Gene Schuler. All this is, however, denied by Herman. Under this evidence and that of plaintiff's financial condition, respondent insists there is proof positive that the parties were engaged in a scheme to defraud Latzke. Respondent evidently *infers* fraud. Is he justified in so doing? We think not. The most that can be claimed is that the parties were trying to compound their debt,—a debt which they felt was too large,—but concededly fixed by reason of the judgment and sale of the property to Latzke. So far as they knew, Latzke owned the property. They wanted to get it back. By reason of their ignorance, they went about the matter in a somewhat blundering fashion. However, they put no restrictions on Herman as to the amount he should pay, and they showed their good faith by putting into his hands the assignment which made possible the accomplishment of their purpose. It was the attempt of unlettered per-

30 N. D.—5.

sons to pay a claim, which, though onerous, yet must be borne, if they would free their land from a fixed encumbrance.  Herman knew this.  His every dealing with the land thereafter, with Latzke, Jones, Grawe, or anyone else, must, so far as he is concerned, be charged with such knowledge.  He was a trustee.  Good morals, safety in business, faith in human nature, all of which underlie and make possible honorable dealings between man and man, conspire to demand the highest good faith upon Herman's part.  He was not dealing with his own.  The property belonged to another.  Without consent he was powerless to convey or encumber it.

It is difficult to conceive how it would be possible to defraud Latzke, when, by reason of his sheriff's certificate, he had the very weapon in his hands, for his own protection.  There is no evidence that Herman was requested to or did in any way misrepresent to Latzke the true situation of affairs, and his dealings with him were in perfect harmony with the thought of perfecting an honorable settlement and paying the debt then owing.  How could Latzke be inveigled into losing any of his rights, assisted, as he was, by astute counsel ever ready to protect his interests ?  It seems hard for us to imagine how a person with no more ability than is possessed by Herman, as shown by his testimony in this record, could lead astray or fraudulently impose upon the credulity of a man who held a sheriff's certificate to a piece of land, by which he could demand every cent coming to him.  We might stop at this point, and conclude, as we must, that the assignment was not given for the purpose of hindering or in any manner delaying the creditor Latzke or anyone else in securing their just and legal obligations.  If, however, we add to those acts the methods by which the parties themselves apparently construed their contract relations, we are bound to conclude that a trust relation, and that only was imposed upon Herman in the making of the Hankinson assignment and deed and taking the Latzke deed.  The continuous possession and use of the land by the plaintiff and her husband; the uninterrupted enjoyment of the same; the making of contracts relative thereto by the plaintiff; the borrowing of money, and especially from Fligelman; the paying of a portion of the same to Hankinson; the payment of a portion of John's obligations; the receipt of a part of the overplus by plaintiff and its nonretention by Herman; the redemption from foreclosure sale of the $300 mortgage by plaintiff; the

payment of a large amount of interest on mortgage loans; the payment of taxes by plaintiff; the utter absence of any acts upon Herman's part indicating ownership,—all combine to show that the parties, in dealing with each other and the land, proceeded upon the theory that plaintiff was in fact the owner of the same. There being, therefore, no fraud practised upon Latzke or anyone else, and there having existed only a trust relation between plaintiff and Herman, it would now be contrary to the plainest principles of equity to permit Herman to take advantage of his fiduciary relation, and burden the land with an additional encumbrance which would practically exhaust all interest which plaintiff has in the land, unless the rights of innocent parties became fixed by reason of the record title concededly being in Herman.

(3) Is the Jones mortgage a lien upon this land? The evidence is uncontradicted that plaintiff has been in open, notorious, adverse, hostile, and exclusive possession of the land in question since the same was purchased from Mr. Kinney in 1899. No one else has ever been in possession of it or any part thereof. Mr. Jones in his testimony concedes that he did not go and examine the land, and stood purely and simply upon his faith in Herman and the record title. It is elementary that one dealing with property, either as a purchaser or mortgagee, which property is in the possession of a third person, deals with it at his peril. An open, notorious, and adverse possession of real property is notice to the world of every right or interest owned or held by the person in possession, whether such right be legal or equitable. O'Toole v. Omlie, 8 N. D. 444, 79 N. W. 849; Hedlin v. Lee, 21 N. D. 495, 131 N. W. 390; 48 Century Dig. 765. In taking the mortgage Mr. Jones was thereby charged with the notice of plaintiff's possession and every right she had to the land. Had he inquired of the plaintiff as to the character of her possession, knowledge would have immediately come to him that Herman did not own the land. He has, therefore, secured a mortgage upon land not owned by Herman, the mortgagor, and as such it would not constitute a lien upon the land.

(4) It is contended, however, that plaintiff is bound to pay Jones's mortgage by reason of the deed from Herman to Grawe. It is claimed upon the part of the defendant Jones that the plaintiff constituted Grawe as her agent to secure the title from Herman, and authorized him to agree to pay the Jones mortgage, and therefore she cannot now be heard,

in view of the evidence relative to that transaction, to be relieved from
the contract alleged to have been entered into by her agent, Grawe. The
relation of the parties to this transaction should be constantly kept in
mind. Up to the point of time when this alleged contract was made,
the parties are in the situation, equitably, of the plaintiff being the
owner of the land with no mortgage to Jones thereon. An analysis of
the facts show that all parties, with the possible exception of Grawe,
had, or by reason of the possession of the plaintiff were presumed to
have, full knowledge of the trust relation existing between Herman and
plaintiff; so that while there was as a matter of record a mortgage run-
ning to Jones, yet, as a matter of substance and of fact, the mortgage
did not exist as a lien or binding obligation of any sort upon the land
in question or upon the plaintiff. It further appears from the undis-
puted evidence that at the time that plaintiff talked with Grawe, either
through Forbes or by herself, over the 'phone, that she had no knowl-
edge of the Jones mortgage, so that when Grawe, her agent, attempted
to take the title from Herman, there was not in equity any such mort-
gage, and there was no knowledge upon the part of the plaintiff of the
existence of the written paper and the record thereof in the form of a
mortgage. She was not under any obligation to go and examine the
record. She had a right to assume that Herman had been faithful to his
trust. Herman knew, or is chargeable with knowledge, of these facts.
Jones was not a party to the transaction in any form. There is some
dispute in the evidence as to what authority was given to Grawe. The
talk was over the 'phone, upon the one part by the plaintiff, who knew
not of the existence of the Jones mortgage, and upon the other part by
one who was simply intent upon collecting his own small obligation of
a little over $100. Mr. Forbes, who probably did some of the talking,
and was at least present when the talk took place, gives no evidence with
reference to what was said. His silence upon this question is corrobora-
tive of the plaintiff's contention that she did not authorize the payment
of any mortgage to Jones. It is difficult for us to conclude that she gave
any authority whatever to Grawe to agree to pay a mortgage she did not
know was in existence, which she did not owe, and which, when dis-
covered, she at once insisted she could not and would not pay. She, it
is true, used the expression, "Back out," in referring to her acceptance
of the deed, but it is clear from the reading of the entire record that

what she meant to say, and what the import of her words and conduct clearly implied, was that she had not authorized the acceptance of the Jones mortgage, and would not affirm any unauthorized act of Grawe agreeing to receive the land subject to that encumbrance. Herman is in no position to claim any wrong done him, because he is charged with the notice of his relation to the land. His attempted participation in a fraud upon the plaintiff by seeking to burden the land with a debt of his own in which she was not interested, or for which she was not responsible in any manner whatsoever, could not bind her. This being true, the plaintiff is not responsible by reason of the unauthorized acceptance by Grawe of a deed from Herman. The testimony of Grawe is very clear; that his situation is not altered by reason of receiving the deed from Herman. The giving of a receipt is only prima facie evidence of a payment. If, as a matter of fact, Herman did not pay his debt to Grawe, and he could not by the transaction referred to, then he still owes Grawe the amount of his debt, whatever that may be, and Grawe is in the attitude of having received a piece of paper which does not create any obligation upon him because of the fact that the party with whom he contracted with reference to the obligation could not, in the very nature of things, bind Grawe or his assigns to pay something which did not in fact exist, that is to say, if there was any obligation whatever running from Grawe to Herman or to Jones, it was to pay a lien which was upon this land in suit; and we hold that there was no such lien, and hence, if there was any obligation, it was to pay something that did not exist, which in itself would create no liability whatsoever.

(5) It is urged that Herman cannot be compelled to give a deed to something which he does not own and the legal title of which is not in him. There should be no confusion with reference to this matter. We hold that the deed from Herman to Grawe did not pass any title to him whatsoever, and that, therefore, the legal title to the land still remains in Herman, and he should be compelled to quitclaim all interest he may have in the land to plaintiff, upon her adjusting the equities hereinafter. referred to. We hold that the trust relation was settled in Schuler's office, and by the agreement of John, Herman, and plaintiff the legal title was to be returned to plaintiff alone. We are of the opinion that the deed to Grawe was only nominal in its character, and the passing of the title from Herman to Grawe and Grawe to the plaintiff was simply as a

matter of convenience, not as a fraud upon anyone, and plaintiff's refusing to accept the same would leave the matter in the same situation as though Herman had offered to deed directly to plaintiff and she had refused to accept it with the Jones mortgage feature therein. If Grawe had been a party to this action, we would have entered a decree which would adjust any apparent rights which Grawe might have had in said land. That, however, can be undoubtedly corrected by securing a quitclaim deed from Grawe, because under his testimony, as shown in this record, he claims no interest whatsoever in the land, and upon his testimony, together with the surrounding circumstances, it seems clear that his relation to the controversy is fixed and determined as against any possible personal interest in the land, or liability which might have been incurred by reason of taking said deed in its present form.

(6) This being an equitable proceeding, before the defendant Herman can be required to execute a deed to the plaintiff, she must of course do equity. This she has, at all times, in her pleadings and in the trial of this action, expressed a perfect willingness to do; and the decree to be entered in this case must be conditioned that Herman be reimbursed for any and all moneys he has himself paid out on account of his trust, and that he be relieved from further liability on the two mortgages,—the $1,500 mortgage and the $300 mortgage,—except as to those portions thereof retained by him. The land conceded to be Herman's must be released from the lien of the $1,500 mortgage. This was the mortgage given to Brokken and which included some of Herman's land as well as the quarter section here in suit.

(7) It is therefore ordered that the decision of the lower court be, and the same is, in all things reversed and the district court is required to enter a judgment to that effect. Further, that court shall require the parties to appear before him, make an account of all the moneys Herman has himself received and paid out on account of the transactions involved in the trust relation, if any, as well as the mortgages above referred to, and plaintiff must present proper releases to Herman's land from the $1,500 mortgage. When this is done Herman is required immediately and within three days to give a quitclaim deed to plaintiff, conveying all of his interest in the land in question. It being distinctly understood that this accounting referred to has reference only to the moneys involved in the trust relation, and does not refer to any alleged

debts owing to Herman by reason of the working upon or in connection with the premises here in suit or elsewhere; or growing out of any supposed contract relations with reference to farming the land with John or plaintiff; it being held that plaintiff, or she and her husband together (except as John's interest was affected by the trust agreement), were the owners of this land during all the times, and were entitled to all of the proceeds of the crops grown thereon.  It is further directed that if defendant. Herman fails to give the quitclaim deed as required herein immediately upon the entering of the decree in the lower court, or within three days thereafter, that this decree shall stand in the place of such deed, and its record in the office of the register of deeds shall operate to make a transfer from the said Herman to the plaintiff herein, as fully as though he did in fact execute and deliver the deed thus required of him to be made and delivered.

It is further decreed that the so-called Jones mortgage of $2,361.84 is not a lien upon the premises in question, and that by this judgment the said land is freed from all possible rights said Jones or anyone claiming under him may have under said mortgage, and this judgment shall operate as full satisfaction thereof.  Plaintiff to have costs in both courts.

Goss, J., did not sit, nor did he take part in this decision, Honorable Chas. A. Pollock, Judge District Court Third Judicial District, sitting in his stead.