OTTO LATZKE, Appellant, v. JOHN KRAUSE, Albertina Krause, Herman Krause, and Louis Fligelman, Respondents.

(179 N. W. 657.)

**Deeds — finding that deed was not procured by fraud and conspiracy held not erroneous.**

In an action to set aside a certain deed on the ground that the execution thereof was procured by fraud and conspiracy, the trial court found that there was neither, and that the deed was valid and effective, and refused to set it aside.

*Held,* for reasons stated in the opinion, that the trial court was not in error.

Opinion filed October 18, 1920.

Appeal from a judgment of the District Court of Richland County, *Frank E. Allen, J.*

Judgment affirmed.

*Dan R. Jones* and *Wolfe & Schneller,* for appellant.

*W. E. Purcell, W. S. Lauder,* for respondents.

GRACE, J. This action is one brought by the plaintiff to set aside a deed executed and delivered by one Hankinson to Herman Krause, conveying the southwest quarter of section 32, Tp. 130 N. of range 49 W., in Richland county, North Dakota.

The further purposes of the action are to recover for the value of the use of said premises, at the rate of $400 per annum, from the year 1902, and the quieting of the title to said premises in the plaintiff, as against all the claims of all the defendants the Krauses.

The facts in the case are many and complicated, and those which are material are as follows:

In January, 1901, one R. H. Hankinson, the owner of the land, sold and agreed to convey the same to John Krause and Albertina Krause, for a consideration of $1,800; he executed and delivered to them a written contract of sale. This contract was never recorded.

Albertina Krause and her husband, John, purchased this land from one Kinney, in October, 1899, upon the crop-payment plan, which provided that all the crops raised upon the land should be applied each year to the purchase price. On the 1st day of January, 1901, the

purchasers had paid the interest to that date, and $30 on the principal. That contract is in evidence, and a memorandum to that effect is indorsed on the contract. About January 1, 1901, a new contract was made between Hankinson and these two defendants, Kinney and Hankinson were doing land business together, and the Hankinson contract was substituted for the Kinney contract. The terms of both were practically the same. The contract from Hankinson to these two defendants was not introduced in evidence.

On August 28, 1901, Otto Latzke recovered judgment, by default, against Albertina Krause and John Krause, for between five and six hundred dollars. On the 4th day of May, 1901, one W. E. Purcell recovered judgment, by default, against the defendants John Krause and Albertina Krause, and also against Otto Latzke, for between three and four hundred dollars.

This plaintiff paid the latter judgment and secured a release thereof. He maintained that it was a lien on the interest of the defendants in the land, superior to the judgment which he had procured against them, and that he paid the same to protect his lien.

On November 26, 1901, execution issued upon the judgment which plaintiff had recovered against Albertina and John Krause; and on the 29th day of November levy was made upon the said land; and on the 13th day of January, 1902, the interest of the defendants in the land was sold at such execution sale, for $290.29, the plaintiff receiving a sheriff's certificate of sale, which was recorded in the office of register of deeds, in Richland county, on the 14th day of January, 1902.

On January 16, 1903, more than a year after the execution sale, no redemption having been made, the sheriff of Richland county delivered his deed of the premises to the plaintiff, purporting to convey all the interest of the defendants in the land to the plaintiff. This deed was recorded on January 16, 1903.

It was on February 4, 1903, after plaintiff had received said sheriff's deed, that he satisfied the Purcell judgment.

The plaintiff further maintains that the following facts are established by the evidence: That, after the 29th day of November, 1901, John, Albertina, and Herman Krause unlawfully agreed and conspired together to devise and carry out a scheme to defraud and cheat him, and that the facts, relative to such fraudulent scheme, are substantially

as follows: That, said defendants should represent to the plaintiff and to Hankinson, that John and Albertina had assigned the contract, for the sale and purchase of said land, to the defendant Herman Krause for a valuable consideration, at a time prior to the attaching of the judgment lien of plaintiff, by levy of execution issued thereon, upon their interest in the land; that Herman Krause owned said land, under said contract, in good faith, free from that lien, under a purchase thereof, in good faith, by him, from defendants, John and Albertina, and under payments made by him to Hankinson, of the balance of the purchase price; that Herman should procure, to be issued to him from Hankinson, a deed conveying the land to him as the owner thereof, in fee simple; that John should become a voluntary bankrupt, and be discharged from his debts, including those owing to the plaintiff; that, upon the issuance of the deed from Hankinson to Herman, he should commence an action against plaintiff, to determine adverse claims to the land, claiming to be the absolute owner thereof; that John should also commence an action against the plaintiff, to determine adverse claims to another tract of land, which he claimed to own and occupy as a homestead, and which of record appeared to be subject to the lien of plaintiff's judgment, and further that the defendants should represent that John Krause and Albertina Krause were insolvent; that all the foregoing was done with the intent to deceive the plaintiff into believing that the defendant Herman Krause was, in truth, the absolute owner of the land, free from all claims of the plaintiff; and that John and Albertina were not the owners of any interest in the land, and had not been at any time after the attachment of the lien of the plaintiff's judgment, by the levy; and all this, with the intent to procure the plaintiff, in reliance upon such representations, to accept, in settlement of his valid and just claims against the defendants, under the judgment, a nominal sum of money to be paid by the defendant, Herman Krause, but for the benefit of John and Albertina, and to procure the plaintiff to release all his claims, both in law and equity, against all the defendants and against the land. The plaintiff further claims as facts, established by the evidence, that pursuant to this fraudulent scheme, defendants represented to Hankinson that John and Albertina had assigned said contract to Herman, for a valuable consideration, at a time prior to the attaching of the lien of plaintiff's judgment, by the

levy, and that Herman owned said land, in good faith, free from said lien, under a purchase in good faith from the defendants John and Albertina, and because of the payments of the purchase price by Herman to Hankinson; and that said defendants, by such representations, induced said Hankinson to believe and act upon the same as true, and to execute, acknowledge, and deliver to the defendant Herman Krause a deed conveying the land to him, which is dated December 5, 1905, and recorded in the office of register of deeds.

It is further claimed by plaintiff that the evidence shows that all of such false representations were made to him, and that the actions to quiet title were commenced by Herman and John, and that the plaintiff relied upon the representations and acts done as aforesaid, and, believing them to be true, and knowing nothing to the contrary, was induced to believe, and did believe, that the assignment of the contract had been made in good faith, for value, prior to the attachment of his lien, by the levy, upon the land; that John and Albertina neither had nor owned any estate or interest in the land or contract, at any time after the levy above mentioned; that the deed from Hankinson to Herman conveyed good and valid title to the land, in fee simple absolute, to Herman, and that Herman was the actual owner thereof, free from any estate or interest therein, on the part of John and Albertina or either of them; that John and Albertina were insolvent and that he could not collect any part of his claim from them, or either of them; that, for these reasons, the plaintiff was induced to compromise all his claims against the defendant, and to release the same, which amounted, at the time of the settlement, to $1,223.15, exclusive of costs incurred in the sale of the land aforesaid under execution, and also to convey the land to Herman Krause, for a total consideration of $100, to be paid by Herman Krause out of money belonging to John and Albertina, or one of them, and that the plaintiff did, induced by the promises, on the 6th day of March, 1906, execute and deliver to Herman Krause a deed of the land running to Herman Krause, as grantee, which is recorded in the office of register of deeds, in book 23 of deeds, at p. 445.

It is further claimed as an established fact, that the assignment of the land contract to Herman was not made before the attachment of the lien of plaintiff's judgment upon the land, by the levy, but many

months thereafter; that the assignment was not for a valuable consideration, or in good faith, but for the express fraudulent purpose of inducing the plaintiff to believe that Herman Krause owned the land, free from all liens or claims of plaintiff, and to cheat and defraud him; that there was a secret agreement and understanding between the defendants, to the effect that John or Albertina, or one of them, should at all times, in spite of the assignment, be and remain the owner of the land and the contract, and be entitled to the full beneficial title, use, and occupation thereof, and that Herman should not, by or through the assignment, or in any manner, obtain an interest in the land or contract; but on the contrary, as soon as the fraudulent scheme should be completed and carried out, and the fraudulent settlement aforesaid made with the plaintiff, and the land conveyed pursuant thereto, Herman should and would convey the land to the defendants John and Albertina, or one of them; that by reason of the secret interest of John and Albertina in the land they were not insolvent; that their interest therein was worth more than the amount of plaintiff's claims, and was not exempt from seizure for sale and execution; that the bankruptcy proceedings, on the part of John Krause, was false and fraudulent, in that he failed to list and schedule any interest in the land as a part of his estate; that Herman Krause, when he commenced the action to determine adverse claims to the land, did not own the same, in fee simple, or at all, but it was owned by the defendants John and Albertina; that John and Albertina have at all times since January 16, 1903, had the possession and use of the land and enjoyed the usufruct therefrom; that the reasonable value of the use of the land is $240 per year; that in the year 1905 the plaintiff removed from Richland county, North Dakota, to the state of Minnesota, and has lived there ever since; that he did not discover the fraud practised upon him by the defendants, as aforesaid, until the month of March, 1915; that he brought this action promptly after the discovery thereof; that the plaintiff has received from the defendant the sum of $100, and is ready, willing, and able to, and offers to, do therewith as equity and good conscience may require, and has offered that sum in court, to abide the order thereof in that regard; that there have been no permanent or valuable improvements made upon the land; that the defendants Krauses have paid the taxes from 1903 to 1917, inclusive;

that, on the 28th day of November, 1905, the defendant Herman Krause mortgaged the premises to Tallak Brokken, to secure the sum of $1,500, which is secured by a mortgage recorded in the office of register of deeds on the 9th day of December, 1905; that the money raised thereby was used by Herman Krause to pay Hankinson for the land and other necessary expenses connected therewith; that on the 23d day of March, 1911, Louis Fligelman purchased the mortgage and the debts secured thereby, and said mortgage was duly assigned to him; that there is due thereon the sum of $1,500; and interest from the 28th day of December, 1910, at the rate of 12 per cent per annum, no part of which has been paid.

It is claimed as an established fact by the defendants John and Albertina, that the assignment of the contract to Herman was made in order that he might bring about a settlement with Latzke, with whom they were not on friendly terms, but with whom he was on friendly terms; that, when Herman took the assignment and procured the deed of the land from Hankinson, by paying him the balance of the purchase price, that he held the land in trust for them; that after Herman acquired the title to the land in trust, he asserted title thereto, or claim and interest or a lien thereon, and also that he mortgaged it to one John R. Jones, for $2,500; that Albertina brought suit against Herman and John R. Jones, and it was finally determined, by this court, that they, or neither of them, had any claim or interest against the land.

Plaintiff's case is based upon an alleged fraudulent agreement and conspiracy between John, Albertina, and Herman, to devise and carry out a scheme to defraud and cheat the plaintiff; that such fraudulent scheme was entered into and consummated by them, resulting in his delivering the deed to the land for the $100, while he was deceived by such fraudulent scheme, and while he was laboring under such deception.

The allegations of fraud and conspiracy against the Krauses are very specific and very extended. The principal charges of fraud, in substance, are above set forth.

While the case appears to be quite complicated, the only real points in the case are, whether the assignment was made after plaintiff ac-

quired his lien under the levy of the execution, but antedated so as to show its execution prior to such lien; and the further point of whether such assignment was dated back, with the intention, and as a part of an agreement and conspiracy entered into by the defendants, for the fraudulent purpose of deceiving the plaintiff, thereby causing him to part with his interest in the land while so deceived.

It is incumbent upon the plaintiff to show by clear and convincing evidence, that the assignment was dated back, so as to antedate the levy under the judgment, for the fraudulent purpose of deceiving the plaintiff; and that plaintiff relied upon all the false and fraudulent representations and was deceived thereby, and, while laboring under such deception, executed the quitclaim deed sought to be set aside, whereby he relinquished his claim and interest, if any he had, in said land.

The assignment of the contract was made in the law office of Gustav Schuler, at Wahpeton. At the time of the assignment of the contract, he was in business with his brother Gene, who was not a lawyer. They officed together and also conducted a loan and real estate business. Gene was also a builder and contractor.

Albertina, John, and Herman Krause and Gustav and Gene Schuler were the only ones present at the time the assignment was executed. Each of them, except Gene, have testified in this case.

It is not practical to analyze the testimony of each witness separately, nor to go into it to any great length. In answer to questions propounded to them, the Krauses, and each of them, earnestly deny any understanding or agreement between themselves, to have the assignment dated back, so as to antedate the levy.

John being called for cross-examination under the statute, in one part of his testimony, admits that the matter of dating the contract back was talked over with Gene. He thought his (John's) wife talked with him. But later in the trial, on redirect examination, he specifically denies any agreement or understanding that the assignment of the Hankinson contract, which he made to Herman, should be dated back, or that he ever entered into any agreement or conspiracy with his wife or Herman to have the contract assigned to Herman and date the assignment back, or that there was any talk of that kind, at any time or place, between his wife, Herman, and himself.

Albertina gives positive testimony, which is to the effect that, at the time of the assignment of the contract, there was nothing said about dating it back; and that she never had any talk, at any time or place, about having the assignment dated back. Herman's testimony is to the same effect.

The Krauses all admit that, at the time the assignment was made, they knew that the plaintiff had a judgment against John; and they also, in effect, testify that the object of the assignment was to get a settlement with the plaintiff, and that Herman being friendly with him, he could get a more favorable settlement than they.

We do not think there is any substantial testimony to show that there was any agreement or conspiracy to defraud plaintiff, by dating the assignment back; nor is there any testimony of the date when they were in Schuler's office; nor to show that the date of the assignment is a date or point of time prior to the actual execution of the assignment.

Gustav Schuler, in whose office the assignment was drawn,—and the testimony shows he was present in the office while the Krauses were there,—says, in answer to the following questions:

Q. You may state whether to your knowledge, at any time, John Krause, Herman Krause, and Albertina Krause, or any of them, came to your office to have an assignment of the contract to a piece of land drawn, from John and Albertina Krause to Herman Krause.

A. I do not remember the circumstance.

Q. You may state whether or not you remember of John or Albertina or Herman, or any of them, ever asking you to draw an assignment of the contract to a piece of land, from John and Albertina Krause to Herman Krause, and to date the assignment back.

A. No, I cannot recall any such circumstances.

Q. If the Krauses, John, Albertina, or Herman should ask you to take the acknowledgment of the assignment and date the assignment back, of the land contract, you would have remembered it, would you not?

A. Why, yes, I believe I would recall it.

Q. It would be an unusual request, would it not?

A. Yes, it would be unusual.

Q. It would be asking you to do something that any lawyer or notary public should not do?

A. So it occurs to me, yes.

Q. And if a request of that kind was made to you, you would remember it, wouldn't you?

A. I think I would.

By Mr. Wolf: "If, under such circumstances as counsel has asked you about, you had been requested to do such a thing, you would have refused to do it?

A. Absolutely.

John, who was a witness in the case of Krause v. Krause, 30 N. D. 64, 151 N. W. 991, being called for cross-examination under the statute in this case, was examined as to certain testimony he gave in that case, relative to the assignment of the contract. He, however, largely failed to remember what he had testified to in that case. His testimony in this regard, in that case, was placed in evidence, by offering that part of the settled statement of that case, relating to the assignment of the contract. We do not think any of that testimony is sufficient to prove the allegations of the complaint in this case, even if such testimony were admissible, and we do not think it was, except for the purpose of affecting the credibility of the witness as an admission against interest, otherwise it was irrelevant and inadmissible. That case was between different parties. This plaintiff was not a party to that suit, nor were any of the defendants, excepting Albertina Krause and Herman.

Albertina Krause was also examined as to her testimony in the former case, and asked if she did not make certain answers to certain questions. The observation we have made in regard to the testimony of John Krause, given in the former case, applies also to Albertina's testimony given in the former case, and about which she was asked in this case.

Some time prior to the trial of this suit, Herman Krause went to the office of Dan R. Jones. There, it became known to Jones, that Herman was going to testify in this case. Jones asked him if he were going to swear the same thing as he swore to before, in the case of Albertina v. Herman and John R. Jones, and that he said that he was going to tell the truth; that Jones then read him what he had said in the former case, about dating back the contract, which was as follows:

Q. Isn't it a fact that the assignment was made afterwards, but was dated back so it would appear that it was made before the Latzke judgment?

A. Yes.

Q. Don't you know the assignment was dated back?

A. I guess so.

Q. Do you know why it was dated back?

A. I guess so.

Q. Mr. Krause, can you tell why that assignment was dated back?

A. Well, it was going to be taken away from them, anyway. Latzke had judgment and he was going—I do not know whether he had sold it or not, but he was going to take it.

Q. He was going to take the land?

A. Yes.

Q. And you wanted it fixed so he could not take the land away?

A. Yes.

Jones was then asked by counsel for the defendants in this case: From what did you read that?

A. I read from the paper book.

Q. In the former case?

A. In the former case.

Jones, continuing, said: "I asked him if he was going to testify to the same thing again, and he said he was, and I says, 'Is that—everything true, Herman?' And he said it was. He volunteered the statement of how the assignment was made. He said they went up to the office of Gustav Schuler, to get Gus to make the assignment, and that they had talked it over with Gus; that Gus said he could not do anything of the sort, and then he said they went to Gene Schuler, and Gene Schuler said, as long as they did not acknowledge the assignment before a notary public, that he could do it and there would be no harm done. Then it was that the assignment was made by Gene Schuler, and dated as they wanted it, before the Latzke judgment. I also read him what John and Albertina had said about this contract, this assignment."

All of that testimony was objected to as hearsay. It is clear that all that Herman said to Jones was a conversation between them, not in

the presence of John or Albertina. It certainly could not be binding upon them; it was purely hearsay, and was inadmissible.

During the cross-examination of Herman Krause, he was asked many questions relating to the testimony which he gave in the former case, relative to the assignment, which questions, in substance, included the testimony given by Herman on the former trial, as read to him by Jones in his office prior to the time of this trial.

It is stipulated that the questions were as asked and answered on the former trial. The former testimony in this regard may be considered admissible, for the purpose of affecting the credibility of the witness Herman, and his evidence in this case in that regard is largely the reverse of what he gave in the former trial.

In the former case, he was an interested party; in this case, he was a witness against his adversary in the former case; that is, for Albertina.

We think his testimony could be disregarded altogether, but as his testimony in this case is corroborated, or is practically the same as that of Albertina and John, with reference to the assignment, it could be considered as corroborated by theirs.

The plaintiff, having been served with the papers in the suit brought against him by Herman to quiet title, went to town of Hankinson and saw Herman. This was in March, 1906, he went out to the farm and had a talk with Herman. He claims that, at that time, Herman told him the assignment was dated ahead of the contract, and that he, Herman, owned the land; that Herman told him that the contract was in the bank, and that John had gone through bankruptcy; that an estimate was made of the amount which John owed the plaintiff, and that Herman then offered to pay him $100, to avoid standing the expense of the suit or trial; that Herman told him that, if he did not accept the $100, John having gone through bankruptcy, that the chances were that he would not get anything.

Plaintiff went into the bank the following day, and claims he examined the contract and assignment, and found the assignment dated ahead of his levy. He then accepted the $100 offered him by Herman, and executed and delivered to Herman a quitclaim deed of the premises.

The testimony of Herman Krause shows, at the time he made the

$1,500 loan on the land, he left the contract with Fligelman, through whom he made the loan from Tallak Brokken; that, when the plaintiff came to see him in March, 1906, he told him that he, Herman, owned the land, and had a deed from Hankinson, and told him that his papers against it were no good; that the plaintiff asked him for a sum of money, about four or five hundred dollars, but that he told him he would not pay any attention to his papers.

Herman denies there was anything said, in that conversation, about the contract or the assignment, and that he, at that time, did not know where the contract was; and that he had never seen it after he turned it over to Fligelman, which was in the fall of 1905, before he made the loan; and that he never, in that conversation, told the plaintiff that the contract was assigned before the levy. He testified that the quitclaim deed was made in the bank by Mr. Kinney, and that the consideration of it was $100, which was there paid.

The trial court made the following finding of fact: "That on the 6th day of March, 1906, one Herman Krause held title to said quarter section of land, subject to the rights of plaintiff, said title, however, being held by the said Herman Krause, in trust, for the defendant Albertina Krause, and not otherwise; in other words, that said Herman Krause held in trust, for the said defendant, Albertina Krause, all the title, interest, and estate, which the said Albertina Krause, defendant, had held or owned in said land; that, on the said 6th day of March, 1906, the plaintiff and said Herman Krause entered into an agreement, by the terms of which the said plaintiff agreed to convey to said Herman Krause his interest in said quarter section of land, on payment to him of the sum of $100; that the said Herman Krause, pursuant to said agreement, on said day, duly paid to said plaintiff the said sum of $100 in money, which plaintiff duly received and accepted, and that in consideration of said payment the said plaintiff, on said day, duly conveyed said quarter section of land to the said Herman Krause, by good and sufficient deed; that, in making and carrying out said agreement with plaintiff, the said defendant, Herman Krause, acted as agent and trustee for the defendant Albertina Krause, and, on the execution of said conveyance from plaintiff to Herman Krause, the said Herman Krause held whatever title to said quarter section of land he acquired by virtue of said deed, as trustee for the

defendant Albertina Krause. The court further finds that in said transaction no fraud or misrepresentation or deceit was practised by either Herman Krause or either of the defendants, John Krause or Albertina Krause. The court finds that the evidence does not establish that the allegation of the complaint that either Herman Krause or defendants John Krause or Albertina Krause, for the purpose of procuring the execution of said deed, falsely represented that the so-called Hankinson contract was assigned to said Herman Krause, before the attachment issued in the case in which plaintiff recovered judgment against the defendants John Krause and Albertina Krause was levied; and the court further finds that, in the transaction in which Herman Krause paid to plaintiff the sum of $100, and the plaintiff conveyed the said quarter section of land to said Herman Krause, the said Herman Krause and the defendants John Krause and Albertina Krause acted in good faith, and in that transaction neither were guilty of any fraud or false representations or deceit.

"The court further finds that the defendant Herman Krause has no interest or estate in, right or title to, or lien or encumbrance upon, said quarter section of land, or any part thereof, except as trustee. The court further finds that the defendant Louis Fligelman, while he did not appear in the action, as a matter of fact, is the owner of a mortgage covering the said quarter section of land, but the exact amount of said mortgage the court does not find further than that said mortgage is a first lien on said quarter section of land."

We think the foregoing findings of fact of the trial court is amply sustained by the evidence, and that the findings of fact, as a whole, are correct. The date on the assignment is prior to the levy of the execution by the plaintiff, and while there is some testimony tending to show that the assignment was made after John was adjudged a bankrupt, which was on the 5th day January, 1902, and some other testimony of like character, we do not think it, or any of the evidence, is sufficient to show that the date of the instrument is not correct, and entirely insufficient to show that the assignment was dated back, in order to antedate the levy of plaintiff, under his execution.

In this case, the plaintiff has charged fraud and conspiracy. The burden is upon him to prove that, by clear and convincing evidence, and in this we think the plaintiff has failed.

As a circumstance in the case, it may also be noticed that plaintiff received his sheriff's deed on January 16, 1903; that there is not any evidence that he ever took any steps to take possession of the land; he permitted the defendants to remain in possession, cropping the same and paying the taxes, and from the time he received the deed, up until the action to quiet title was commenced against him by Herman, he certainly could not claim that he had been deceived by anyone. He must have known that they were raising crops on the land, and making payments to Hankinson on the purchase price of it.

John and Albertina Krause, at that time, had only a contract from Hankinson for the purchase of the land. That contract would, no doubt, have been subject to cancelation, if payments had not been made, and crops had not been raised with which to make the payments, as it was a crop contract. Yet, there is no demand for possession by the plaintiff, nor did he assert any act of ownership over it. He did not pay any taxes during that time, nor did he ever do so. Plaintiff's conduct, in this regard, certainly shows that he did not believe his interest in the land, if any he had, of any great value.

In the case of Krause v. Krause, 30 N. D. 64, 151 N. W. 991, one of the principal issues, as we view it, was whether there was any fraud in the assignment of the contract. This court, in stating the facts in that case, uses the following language: "Defendant, as a second defense, insists that the assignment to Herman was also made in fraud of creditors, and especially the creditor Latzke; among other things, calls attention to the fact that, on January 5, 1902, plaintiff's husband filed a voluntary petition in bankruptcy, was adjudged a bankrupt and discharged as such, December 3, 1903. The judgment of Latzke was scheduled in that proceeding. Defendant claims that the assignment of the Hankinson contract was in March, 1902, but was dated back, so as to appear to have been made before the Latzke judgment. The evidence as to dating back is very unsatisfactory, and was brought out from Herman by direct question of his counsel. The fact is denied, and the evidence will hardly warrant the court in finding that such assignment was dated back."

While that action was not between the same parties as this, and while the principle of *res judicata* could not, for this reason, perhaps, be invoked, even though some of the issues were the same, and especial-

ly was the issue of the antedating of the assignment involved in that case, yet we think we may take notice that the issue of antedating the contract was involved in that case, and that the evidence which tended to show such antedating was even stronger there than here, but, as the excerpt from the decision in that case shows, is not regarded as sufficient to show the fact of antedating the assignment. And so we conclude in this case, the evidence is entirely insufficient to show the antedating of the assignment, or to show fraud in procuring the same.

The testimony in this regard is not at all clear or convincing. We must therefore hold there is no fraud or conspiracy shown as claimed by plaintiff. We think the settlement made with Herman by plaintiff, whereby he received $100 from him, and gave him a quitclaim deed of the land, must be held to be a full and complete settlement for his interest in the land, if any he had, and his quitclaim deed must be held to have been validly and legally executed and delivered, and that it conveyed his interest in the land to Herman.

We think, also, that defendants John and Albertina may be considered the owners of the fee title of the land in question, free from any claims of plaintiff, by reason of having been in possession, under color of title, for a period of ten years, and paying the taxes during all that time.

It is true that for one year of the ten Herman paid the taxes, but we must hold, as the trustee for John and Albertina. At the time he paid the taxes for the year, he had money in his possession belonging to them, or one of them, which was greater in amount than the amount of the taxes for that year.

There is no dispute but that the $1,500 mortgage, above referred to, is a valid and subsisting lien upon the land in question, and it is so held.

We have examined all the errors assigned, and find none that would justify a reversal of the judgment. The judgment appealed from is affirmed. Respondent is entitled to his costs and disbursements on appeal.