MILLER, et ux. *v.* MILLER.

May 18, 1953

No. 38778          32 Adv. S. 39          64 So. 2d 739

*Vollor, Teller & Biedenharn,* for appellants.

*George Chaney* and *Dent, Ward & Martin,* for appellees and cross-appellants.

KYLE, J.

Don S. Miller, as complainant, filed a bill of complaint in the chancery court of Warren County against George W. Miller and his wife, Earle G. Miller, defendants, asking for a reduction in the monthly rental to be paid by the complainant as lessee to the defendants as lessors for the use of a gasoline service station in the City of Vicksburg on account of the destruction of the main service station building by fire. The complainant in his bill also prayed for alternative relief, asking that the

defendants be required to restore the building to its former condition, and for general relief.

The defendants in their answer admitted that the property had been leased by them to the complainant for a term of years, and that the service station building had been greatly damaged and partially destroyed by fire, as alleged in the bill of complaint. But the defendants averred in their answer that the damage and partial destruction of the building by fire had been caused by the negligence of the complainant, who had exclusive possession, management and control of the same as lessee; that the complainant had negligently stored or permitted to be stored in the building cans of gasoline at or near an electric battery charging machine, which had defective electric wiring attached thereto, and that the electric sparks from the defective wiring of the battery machine had caused this gasoline to ignite; that the negligent storing of the gasoline in the building in such close proximity to the battery charging machine with its defective electric wiring was the proximate cause of the fire; and that the complainant was not entitled to the relief prayed for. The defendants made their answer a cross bill, and asked for a decree against the complainant and cross defendant for the sum of $4300.00, which represented the estimated cost of repairing and reconstructing the building.

The record shows that the service station property had been leased to the complainant by the defendant on March 21, 1950, for a term of one year, with an option on the part of the lessee to renew the lease at the end of the one-year term for an additional term of five years. The leased premises included the gasoline service station and the lot on which the service station was located and also two small buildings located on the east side of the lot behind the service station building. The lease contract provided for the payment by the lessee to the lessors of $150.00 per month as rent for the use of the leased prem-

ises. The lease contract also contained an option in favor of the lessee to purchase the property at any time during the term of the original lease or the renewal lease. Don S. Miller went into possession of the leased premises on March 21, 1950, and thereafter operated a gasoline service station thereon. On the night of September 30, 1951, the service station building was damaged and partially destroyed by fire.

The complainant testified that the fire occurred about midnight; that his brother, Louis Miller, who was operating the service station for him at that time notified him a few minutes after the fire was discovered that the service station building was burning; and that he went immediately to the scene of the fire. The fire department had been notified and the city firemen had arrived. The building was in flames, and by the time the fire was brought under control great damage had been done to the building. According to the testimony of the complainant and the testimony of the other witnesses the building had been ''pretty well gutted'' by the fire. Most of the stock of merchandise in the sales room was destroyed by the fire. Sometime during the month of October the complainant through his attorney undertook to negotiate an agreement with the lessors for a reduction in the monthly rental or a restoration of the building. But the lessors refused to agree to reduce the monthly rental or to restore the building. The complainant then employed a building contractor to repair the fire damage and restore the building to a condition fit for use. The contractor put in new floors and floor joists, repaired or replaced the studdings and rafters, and put on a new roof. The walls on the inside and the ceiling had been ruined by the fire, and as a part of the repair job the damaged celotex was torn out and the walls and ceiling were refinished with sheet rock covering. New windows and doors were installed in the building, and also new electric wiring. The total cost of the repairs made by the complainant amounted to approximately $4,200.00. The repairs were completed and

the service station was reopened for business on December 7, 1951.

The complainant stated that he did not know what caused the fire. He stated that he had on hand at the service station two battery chargers which were in use at the time of the fire. One was a slow battery charger which he had acquired from the defendants at the time he obtained the lease on the building, and the other was a quick battery charger, which was being used outside of the building at the time the fire was discovered in charging a battery for a customer. The complainant stated that there was a can of white gas stored in the grease room in the southeast corner of the building; but the grease room had not been disturbed by the fire.

Louis Miller, who operated the service station for his brother, testified that he was engaged in charging a battery for C. T. Whittington, whose car was parked in the concrete driveway, when the fire was discovered. He was using the quick battery charger for that purpose. The slow battery charger was in the south room of the service station at the time of the fire. Louis stated that the slow battery charger was in good condition, and that he had never had any trouble with it. He said that he did not keep on hand fuel gas mixtures for outside motors, and that there were no cans of gasoline inside the building on the night of the fire. He admitted that there was a 20-gallon kerosene tank in the south room near the slow battery charger and a lube tank containing bulk oil; but he stated that neither the kerosene, nor the lube oil were burned on the night of the fire. He stated that there was a tank, containing white gasoline used for cleaning, in the grease room, but that the grease room was not disturbed, only smoked up a little. He stated that when the fire was first discovered it seemed to be coming through the ceiling.

C. T. Whittington and Howard Miller, another brother of the complainant, were at the service station when the fire was discovered. Both testified that when the fire

broke out it appeared to be over the door of the north room and in the attic. None of the witnesses were able to account for the origin of the fire.

The defendants, George W. Miller and his wife, who were living in the dwelling house located on the east side of the service station lot, about 150 feet from the service station, testified that they heard a puffing noise about 12 o'clock on the night of the fire, and that they went to the scene of the fire a few minutes later. The flames appeared to be coming out of the southwest corner of the service station building. Both testified that after the fire had been extinguished the building was badly charred. The defendants had an estimate made of the probable cost of having the building repaired, so that it would be fit for use again, and the estimated cost was $4,258.70. The chief of the Vicksburg Fire Department and one city fireman testified as witnesses for the defendants. They stated that they arrived at the scene of the fire soon after the alarm was given; that the fire spread very rapidly and seemed to be concentrated in the south part of the building; that there were gasoline containers and oil cans in the building, and a pile of rubber tires. Many questions were asked the witnesses concerning the origin of the fire, but neither of the witnesses was able to state definitely where the fire started, nor how the fire originated. The chief of the fire department testified that there was a heavy accumulation of smoke, and he assumed that it was gasoline that had fed the flames. But, when asked about the cause of the fire, his answer was, ''As near as I could determine, it appeared to be an accidental fire.''

The chancellor incorporated in the record a detailed statement of his findings of fact and his conclusions of law. The chancellor stated that it appeared to him, from the testimony as a whole, that the fire had started overhead, and not from the floor; that none of the witnesses had undertaken to state the cause of the fire; and that the nearest approach to an explanation of the origin of the

fire was that it had been caused by defects in the electric wiring in the ceiling. The chancellor found that the defendants and cross complainants had failed to sustain the charge made by them in their cross bill that the fire had been caused by the negligence of the complainant; and the chancellor held that the cross bill should be dismissed. The chancellor stated that under the terms of the lease contract the lessee had agreed to keep and maintain the leased property in a good state of repair, except the roof, foundation and outside surface (not including the painting), which the lessors had agreed to keep and maintain in a good state of repair, and that the complainant was not entitled to a reduction in the rent. But the chancellor held that the complainant was entitled to a decree for an amount equal to the cost of restoring the roof, foundation and outside surfaces of the building (not including the painting) ; and the chancellor entered a decree awarding to the complainant a money judgment for the sum of $1,064.50 to cover the cost of those items. The chancellor denied the prayer for a reduction in the monthly rental provided for in the lease contract.

From that decree the defendants and cross complainants have prosecuted this appeal, and the complainant and cross defendant has prosecuted a cross appeal.

The first point argued by the appellants' attorneys on this appeal is that the chancellor erred in holding that the appellants had failed to sustain the charge made by them in their cross bill that the fire had been caused by the negligence of the complainant or his employees. But we think that the chancellor was correct in his finding that the testimony offered on behalf of the cross complainant was wholly insufficient to prove that the fire had been caused by the negligence of the complainant or his employees.

It is well settled that, ▮▮ in the absence of an agreement to the contrary, the tenant is not liable for damages to or the destruction of a building by fire unless there was negligence or fault on his part. The tenant is not liable

for accidental damages or destruction by fire, unless he has contracted to assume liability for such damages. He is only liable if the building is destroyed through his negligence. 32 Am. Jur., p. 669, Landlord and Tenant, par. 783.

Section 898, Code of 1942, provides that: "A tenant shall not be bound to pay rent for buildings after their destruction by fire or otherwise, nor shall a covenant or promise by a lessee to leave or restore the premises in good repair have the effect to bind him to erect or pay for such buildings as may be so destroyed, unless in respect to the matters aforesaid there was negligence or fault on his part, or unless he has expressly stipulated to be so bound."

In the case of Roell v. Brooks, et al., 205 Miss. 255, 38 So. 2d 716, the Court had under consideration the question of the landlord's right to recover damages in a case of this kind, and in discussing the basis of the landlord's right to sue under the provisions of the above mentioned statute the Court said that the concluding clause of the statute is merely declaratory of the common law right of the landlord to sue the tenant for a negligent act resulting in damage, and that the burden of proof is on the landlord to show negligence on the part of the tenant and to show that the negligence of the tenant was the proximate cause of the fire. And the Court in that case held that the proof offered by the plaintiffs was insufficient to prove the charges alleged, and that the peremptory instruction requested by the defendant should have been given.

The rule laid down in Roell v. Brooks, et al., supra, is applicable to the facts in this case, and there was no error in the action of the chancellor in denying the relief prayed for in the appellants' cross bill.

The next point argued by the appellants' attorneys in their brief is that the Court erred in holding that under the terms of paragraph 12 of the lease contract the ap-

pellants were obligated to pay a part of the cost of reconstruction of the service station building after the fire. And, after a careful examination of the record, we are of the opinion that the court was in error in holding that the appellants were liable for a part of the cost of the reconstruction of the building after the fire.

In the absence of an agreement to the contrary, the landlord is not obligated to make repairs upon the demised premises during the term either to put the premises in a proper state of repair or to keep them in such condition. Jones v. Millsaps, 71 Miss. 10, 14 So. 440, 23 L. R. A. 155; 32 Am. Jur., p. 521, Landlord and Tenant, par. 657. And it is well settled that the landlord is under no obligation to rebuild or restore premises destroyed without his fault if he had not covenanted to do so. Kirby v. Wylie, 108 Md. 501, 70 A. 213, 21 L. R. A. (N. S.) 129, 129 Am. St. Rep. 451; Wattles v. South Omaha Ice & Coal Co., 50 Neb. 251, 69 N. W. 785, 36 L. R. A. 424, 61 Am. St. Rep. 554; Smith v. Kerr, 108 N. Y. 31, 15 N. E. 70, 2 Am. St. Rep. 362; Freeguard v. Bingham, 108 Vt. 404, 187 A. 801; Arbenz v. Exley, Watkins & Co., 52 W. Va. 476, 44 S. E. 149, 61 L. R. A. 957.

Under the common law, in the absence of an agreement on the part of the landlord to make repairs, the burden of making repairs upon the leased premises usually falls upon the tenant; and if the tenant makes the repairs on the demised premises to make them habitable, he must do so at his own cost. But the tenant is not obligated to make such repairs unless he has covenanted to do so. Likewise, in the absence of an agreement between the parties, there is no obligation on the part of the lessor to pay the lessee for improvements erected by the lessee upon the demised premises, even though the improvements are such that by reason of their annexation to the freehold they may have become a part of the realty and cannot be removed by the lessee. 32 Am. Jur., p. 524, Landlord and Tenant, par. 659.

Paragraph 12 of the lease contract in the case that we now have before us is as follows: "It is further understood and agreed that the Lessee shall keep and maintain said leased property in a good state of repair, except the roof, foundation and outside surfaces (except painting) of said buildings, which Lessors shall keep and maintain in a good state of repair." The chancellor was of the opinion that under the provisions of the foregoing paragraph of the lease contract the lessors were obligated to pay the lessee for the new roof placed upon the filling station building and the cost of repairs made on the foundation and the outside surface of the building, amounting to $1,064.50; and the chancellor entered a decree against the lessors for that amount.

We think that the chancellor was in error in holding that the above mentioned limited covenant by the lessors to keep and maintain the roof, foundation and outside surface of the buildings in a good state of repair, bound the lessors to help rebuild the service station after its destruction by fire. The complainant alleged in his bill of complaint, and the defendants admitted in their answer, that the building "was practically destroyed by fire and was made totally useless for the purpose of conducting business therefrom or for any other practical purpose." The testimony of the witnesses showed that the facts thus alleged were true.

"A general and unqualified covenant by a landlord to repair is usually held to impose on him the duty to rebuild the premises after destruction by fire or the elements. * * * However, a limited covenant by the lessor to keep the roof or other parts in repair does not bind him to rebuild the building in the event of its destruction by fire." 32 Am. Jur., p. 586, Landlord and Tenant, par. 709; Arbenz v. Exley, Watkins & Co., 52 W. Va. 476, 44 S. E. 149, 61 L. R. A. 957; Anno. 28 A. L. R. 1541.

The parties to the above mentioned lease contract might have bound themselves by a special agreement to restore

the service station building, in the event the building should be destroyed by fire during the term of the lease, if they had seen fit to enter into such binding agreement. But they did not see fit to do so. The obligation which each assumed in paragraph 12 of the lease contract was only a limited obligation to repair. Neither the lessors nor the lessee assumed any obligation to rebuild, in the event that the service station building should be destroyed by fire. The lease contract should be construed to give effect to the intention of the parties; and the obligations imposed in the contract entered into by the parties should not be enlarged by construction beyond their fair intent. And for the reasons which we have stated that part of the decree which provided for a money judgment in favor of the complainant and against the defendants for the sum of $1,064.50 must be reversed.

We come now to a consideration of the appellee's cross appeal. Several errors have been assigned and argued by the appellee in his brief in support of his cross appeal. But the main question presented for our decision on the appellee's cross appeal is whether the chancellor erred in refusing to reduce the amount of the rent to be paid by Don S. Miller, the cross appellant, complainant in the court below, to George W. Miller and his wife, Mrs. Earle G. Miller, cross appellees, defendants in the court below, for the use of the leased premises during the remainder of the term.

Section 898, Code of 1942, as we have seen above, provides that a tenant shall not be bound to pay rent for buildings after their destruction by fire or otherwise, unless there was negligence or fault on his part, or unless he has expressly stipulated to be so bound. The provisions of that statute appear in slightly different language as sections 1239 and 1240, Code of 1880, and have been retained as a part of the statute law of this State since that time. The statute was intended to mitigate the harshness of the rules of the common law announced in

the old English case of Paradine v. Jane, Aleyn 26. Under the statute, where a substantial portion of the leased premises is destroyed by fire without the fault or negligence of the lessee, the lessee is entitled to an apportionment of the rent covenanted to be paid and accruing thereafter, in the absence of an express assumption by him of the risk of such destruction.

In the case of Taylor v. Hart, 73 Miss. 22, 18 So. 546, 30 L. R. A. 716, the Court had before it for consideration almost the exact question that we have here. The lease involved in that case was a lease of the Gum Spring Plantation, in Yazoo County, for a three-year term, beginning January 1, 1893, and ending January 1, 1896. The annual rental to be paid by the lessee to the lessor for the use of the property was $1,150. The leased premises included farm land and a ginhouse and gin machinery located thereon. The lease contract provided that the lessee "shall return the ginhouse machinery, gin stand and press at the end of his term in as good condition as when received by him; and if said machinery, stand and press shall be injured, damaged or destroyed by the negligence or fault of said lessee, or those in his employ, said lessee shall be liable for the value thereof." The appellee went into possession of the leased premises, and in February, 1893, about one month after the three-year term had commenced, the ginhouse, with its appurtenances, was destroyed by fire, without fault or negligence on his part. He remained in possession, however, and paid the rent for that year. On November 19, 1894, however, there being $350 balance due on the rent for 1894, the appellant distrained therefor and seized twenty bales of cotton. The appellee replevied the cotton and to the appellant's avowry filed a replication setting up the facts concerning the destruction of the ginhouse by fire. When the case was tried in the circuit court, the appellee claimed that the rental value of the gin property was $350 per year, and that he was entitled to an abatement of a part of the rent to that amount. The Court held that in such case, if

the ginhouse constituted a material consideration of the lease, on its destruction by fire, without the lessee's fault or negligence, the rent should be abated in the proportion that the value of the use of the ginhouse and machinery bore to the value of the use of the whole premises.

The appellee was entitled to an apportionment and a partial abatement of the rent covenanted to be paid and accruing after the date of the fire; and the chancellor should have decreed a reduction in the rent as prayed for in the bill of complaint, the amount of the reduction to be allowed being the proportion that the value of the use of the service station building which was destroyed by the fire bore to the value of the use of the whole premises in the condition they were in prior to the destruction of the building by the fire. Taylor v. Hart, supra. The testimony that we have before us at this time is insufficient to enable us to make a proper apportionment of the value of the use of the service station building as compared with the value of the use of the whole premises prior to the date of the fire, and it is therefore necessary that the cause be remanded in order that additional proof may be taken on that issue. That part of the decree dismissing the original bill of complaint insofar as it sought a reduction in the monthly rental provided in the lease contract, and denying the complainant's claim for a reduction in the monthly rental provided for in the lease contract, is therefore reversed, and the cause is remanded for further hearing on the issue as to the amount of the reduction in the monthly rental that should be allowed and for such final action as may be necessary to effectuate a proper reduction in the rent, in conformity with the rule hereinabove stated.

Affirmed in part and reversed in part on direct appeal, and reversed and remanded on cross appeal.

*Roberds, P. J.*, and *Holmes, Ethridge* and *Lotterhos, JJ.*, concur.