Everett J. Lewis, and Bernard H. Manausa, Copartners
Doing Business as World Wide Chinchilla Ranch,
Appellants, v. The Real Estate Corporation, and
La Salle National Bank, as Trustee Under Trust
No. 10778, and Individually, Appellees.

Gen. No. 46,524.

First District, Second Division.

May 17, 1955.

Released for publication June 30, 1955.

[redacted]

Barnard & Barnard, of Chicago, for appellants; Morton John Barnard, of Chicago, of counsel.

Andrew D. Collins, of Chicago, for appellees.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This appeal is prayed from a judgment entered by the superior court of Cook county striking the amended complaint of the plaintiffs and entering judgment for the defendants.

The plaintiff's amended complaint (hereafter referred to as the complaint) alleged that on February 13, 1953 the defendant The Real Estate Corporation (hereafter referred to as the lessor) entered into a written lease with the plaintiffs (hereafter referred to as the lessees) for certain premises on Harlem avenue, for a term of five years, the premises to be used for the sale and boarding of chinchilla animals. A copy of the lease was attached to the complaint, together with other exhibits. The lease consisted of a printed form and a two-page typewritten addendum. Under paragraph 22 of the addendum the lessees were given the right to construct, at their own expense, an addition or additions to the main building which formed a part of the demised premises. The paragraph further provided that if, after the completion of the addition or additions by the lessees, the lessor elects to cancel the term of the lease created herein "as provided in paragraph 23," the lessor should reimburse the plaintiffs in the amount of 1/60th of the cost of construction (not

241

to exceed $10,000) for each month of the term remaining after the delivery of possession by the lessees. Paragraph 23 of the addendum provided that if the lessor elects to sell the said premises the lease may be terminated on March 31st of each year by giving not less than nine months' written notice to the lessees, and that consideration as hereinbefore provided shall be payable to the lessees for this right.

It is further alleged that the plaintiffs went into possession under the lease, paid the rent and performed all agreements required of them thereunder; that in accordance with paragraph 22 of the addendum the lessees constructed an addition to the main building, at a cost to them of $11,310.91; that on October 20, 1953 the improvements, including the addition constructed by lessees, were destroyed by fire, and lessees were unable to and did not thereafter occupy the premises; that on November 9, 1953 the lessor served a notice on the lessees setting up that it had, in accordance with paragraph 13 of the lease, elected not to restore or rehabilitate the building so destroyed by the fire, but had elected to terminate the lease as of the date of said fire, and directed the lessees to remove any property owned or claimed by them without delay; that thereupon the lessees notified the lessor that they claimed reimbursement for 53/60ths of the cost of construction of the addition erected by them under the lease; that the lessor refused to pay the sum demanded or any part thereof. In the alternative the lessees claim for the reasonable value of the improvements erected by lessees as they existed immediately prior to the fire.

The lessor filed a motion to strike the complaint, on the ground that it lacked allegations of fact showing a liability on the part of the lessor. The court sustained the motion to strike and dismissed the suit.

The lessees' theory on appeal is that under the terms of the lease the lessor, on its election to terminate the lease after the destruction of the buildings on the

· 242

premises, became obligated to the lessees for the proportion of the cost of the buildings erected on the premises by the lessees, as provided in paragraph 22 of the addendum to the lease; or in the alternative for the reasonable value of the buildings constructed by the lessees as they existed before the fire. The lessor's theory is that the lessees had no such right under the terms of the lease and that they could not recover in the alternative because their claim was grounded on an implied contract which is nonexistent under the facts here.

The determination of the rights of the parties requires a construction of the lease. The printed lease contains the clauses ordinarily found in leases. Among other things, it provides, in paragraph 9, that "no promise of Lessor to alter, remodel, improve, repair, decorate or clean the premises or any part thereof . . . has been made by Lessor to Lessee, unless the same is contained herein or made a part hereof"; and that at the termination of the lease "by lapse of time or otherwise, Lessee shall return the premises and all equipment and fixtures therein in as good condition as when Lessee took possession, ordinary wear and tear excepted, failing which Lessor may restore the premises, equipment and fixtures to such condition and Lessee shall pay the cost thereof upon request." Paragraph 10 provides that the lessee shall not make any alterations in or additions to the premises without lessor's consent in writing, and that "all additions, hardware, non-trade fixtures and all improvements, temporary or permanent, in or upon the premises, whether placed there by Lessee or by Lessor, shall, unless Lessor requests their removal, become Lessor's property and shall remain upon the premises at the termination of this lease by lapse of time or otherwise without compensation or allowance or credit to Lessee"; and further provides that if the lessee, upon

243

lessor's request, does not remove said additions, etc., the lessor may remove them at the cost of the lessee.

Paragraph 12 provides that "subject to the provisions of Section 13, Lessee shall, during the term, at Lessee's own expense, keep the premises in good order, condition and repair," and if the lessee does not make such repairs promptly and adequately, the lessor may make them at the cost of the lessee. Paragraph 13 provides: "If the premises or the building are made wholly untenantable by fire or other casualty, Lessor may elect (a) to terminate this lease as of the date of the fire or casualty by notice to Lessee within thirty days after that date, or (b) to repair, restore or rehabilitate the building or the premises at Lessor's expense within one hundred twenty days after Lessor is enabled to take possession of the injured premises and undertake reconstruction or repairs, in which latter event the lease shall not terminate but rent shall be abated. . . ."

■■ At common law, in the absence of any covenant or agreement between the parties, there is no duty resting upon either the lessor or lessee to restore or replace the leased premises when destroyed by fire, and the lessee under such circumstances would still be required to pay the stipulated rent. Stow v. Russell, 36 Ill. 18, 35. It was optional with the lessor as to whether or not he would himself make repairs, and he could compel the lessee either to surrender the premises or retain them, making such repairs as he might desire. 51 C. J. S., Landlord and Tenant, Sec. 366 (d). It is also the law that where the lease contains a covenant that the lessee should make repairs, together with a covenant that the lessee should deliver up the premises in the same condition as they were at the time of letting, the lessee is bound to restore the premises in the case of destruction by fire. Ely v. Ely, 80 Ill. 532; 51 C. J. S., Landlord and Tenant, Sec. 412.

Under the lease before us the lessees had agreed both to make repairs and to deliver up the premises in the same condition as they were at the time of the letting. However, the covenant with reference to repairs (paragraph 12) is subject to the covenant with reference to what ensues in case the premises are destroyed by fire (paragraph 13), in which latter case the lessor has its option either to terminate the lease within a designated period or to restore the building within another designated period. The lease also specifically provides that the lessees have no right to make alterations or additions to the premises except as provided therein. The addendum attached to and forming a part of the lease provided in clause 22:

"The Lessees shall have the right to construct, at their own expense, an addition, or additions, to the rear and/or the front of the main building of which the demised premises form a part. . . .

"If after Lessees shall have completed said addition, or additions, and if Lessor shall elect or decide to cancel the term of lease created herein, as provided in Paragraph 23, Lessor agrees to pay Lessees one-sixtieth (1/60) of the amount representing Lessees' actual cost (as evidenced by receipted bills) for labor and material of said addition, or additions, for each and every month of the term of lease remaining after Lessees shall have given up and delivered to Lessor possession of said demised premises. . . ."

The obligation of the lessor to pay for such additions was conditioned under clause 22 that the lessees shall not at that time be in default under the lease, and it was further provided that the cost as considered for this purpose shall not exceed the sum of $10,000.

Paragraph 23 provides:

"In the event Lessor shall elect or decide to sell the premises herein demised this lease may be terminated on March 31st of each year during the term herein created by giving not less than nine (9) months prior

245

written notice to the Lessees. Consideration, as hereinabove provided, shall be payable to the Lessees for this right. . . ."

The lessees contend that under the provisions of paragraph 22 they were entitled to receive the designated compensation when the lease was terminated by the lessor under the provisions of paragraph 13.

■ It is elementary that every contract, including leases, must be construed as a whole. Chicago Auditorium Ass'n v. Corporation of Fine Arts Building, 244 Ill. 532. In this case the lease, in paragraph 10, specifically provides that all improvements, whether temporary or permanent, placed upon the demised premises by the lessees, shall, at the termination of the lease by lapse of time or otherwise, become the property of the lessor without any compensation or allowance to the lessees. Paragraph 12 of the lease, which places the obligation on the lessees to keep the premises in good repair, is made subject to the provisions of section 13, which states the procedure to be followed in case of total destruction of the premises by fire, thus ameliorating the necessity which would otherwise be upon the lessees to restore the premises, since they covenant not only to keep the premises in repair during the term thereof, but also to return them to the lessor, at the termination of the lease by lapse of time or otherwise, in the same condition as they were at the time of the letting. Without clause 22 of the addendum the lessees would have no right to make any additions to the property; nor would the lessor, except for clause 23 of the addendum, have any right, upon a sale of the premises, to terminate the lease before the expiration of its term. Clause 22 permits the lessees to erect additions to the property. Clause 23 permits the lessors to terminate the lease on the sale of the premises, and as consideration for such agreement it further provides that the lessor shall pay the lessees a certain designated amount as compensation for any

additions which the lessees may have elected to put upon the property. These provisions are interdependent and must be construed together, and they cannot, by construction, be extended so as to apply to other independent clauses of the lease. The language of the lease is plain and certain. It contains no ambiguities. Consequently the rule that a lease in case of doubt or uncertainty should be most strongly construed against the lessor is not applicable.

██ The lessees argue that because there is, in paragraph 14 of the lease, a provision that the lease shall be terminated if a substantial part of the premises should be condemned by public authority, without any apportionment of the award between the lessor and the lessees, it is indicated to be the intention of the parties that where there is a termination of the lease for any other reason, the lessor is required to pay the lessees for the improvements by them placed upon the property. In other words, it is the contention of the lessees that because it is specifically provided in this clause of the lease that no compensation shall be paid to the lessees if the lease is terminated when the property as a whole is condemned or its value seriously impaired by the act of a public authority, then it must be considered that where the lease is terminated for any other purpose whatsoever, compensation for any additions to the property was assumed by the lessor. Such a contention is not in accord with the ordinarily recognized rules applicable to construction of a contract. A lessee's right to reimbursement for improvements exists only where there is a specific agreement therefor. In Hansen v. Stein, 201 Ill. App. 501, the court says:

"It is a well-settled rule of law that:

" 'A landlord is not liable to his tenant for the value of improvements voluntarily made by the latter, in the absence of an agreement creating such liability; the tenant's right extending no further than that of

removal of them before the expiration of his term.'
24 Cyc. 1104. Bedford v. Bedford, 136 Ill. 354–362.
"The tenant is presumed to repair and improve for his own benefit. Gocio v. Day, 51 Ark. 46."

Since here such right was not expressly given by the lease to the lessees, immunity therefrom by the lessor does not require an express denial of liability in the provisions of the lease. In order to reach the conclusion contended for by the lessees, it would require reading into the lease provisions which are not contained therein. In Green v. Ashland Sixty-Third State Bank, 346 Ill. 174, the court says:

"If a written contract purports on its face to be a complete expression of the whole agreement it is to be presumed that the parties introduced into it every material item and term, and in construing it the court will not add thereto another term about which the agreement is silent. (Sterling-Midland Coal Co. v. Coal Co., 334 Ill. 281; Armstrong Paint Works v. Can Co., 301 Ill. 102.) No words can be added to or taken from an instrument and thereby change the plain meaning of the parties as expressed therein. (Stevens v. Felman, 338 Ill. 391.) The object of construction is to ascertain the intention which the parties have expressed in the language of the contract, and where there is no ambiguity in the terms used the instrument itself is the only criterion of the intention of the parties. (McCormick v. Sanford, 318 Ill. 544.) . . . The motives and intentions of the parties can only be known from the writing to, which the contract is reduced, and no assumption which is contrary to the language used therein can be based upon any external consideration. (Emerich Outfitting Co. v. Siegel, Cooper & Co., 237 Ill. 610.) The intention must be determined from the language used in the instrument and not from any surmise that the parties used the language to express an intention or meaning they had in mind but failed to express, and if they have over-

248

looked a condition which they would perhaps have provided for if it had occurred to them, the court cannot guess at the provision they would probably have made and by construction read it into the instrument on the presumption that they would naturally have made such provision if they had thought of it. (LaRocque v. Martin, 344 Ill. 522; Foss v. State Bank and Trust Co., 343 Ill. 94.) If the words of a contract are plain and unambiguous the contract must be so construed as to give effect to the plain and obvious import of the language used. (Bearss v. Ford, 108 Ill. 16.) When the parties are competent to contract, with the wisdom or folly of their contracts, made for a consideration and without fraud, courts of law have no concern. (Florida Ass'n v. Stevens, 61 Fla. 508; Mizell Live Stock Co. v. McCaskill Co., 59 Fla. 322.) One who contracts cannot be relieved of the obligation of his contract, which binds him to perform his agreement, without the consent of the other party; and he has no right to impose a condition not provided for in the contract itself. (Thomson v. Thomson, 315 Ill. 521.)"

See also Abingdon Bank & Trust Co. v. Bulkeley, 390 Ill. 582.

The lessees cite in support of their contention Smyth v. Stoddard, 203 Ill. 424, in which case the lessors leased a farm to the lessee by written lease, and authorized him to erect a barn at his own expense. The agreement further provided that whenever the lessee surrendered possession of the farm to the lessors at the expiration of the lease the lessors would either pay the lessee a fair consideration for the barn or give him a reasonable time within which to remove the same. The lessee built the barn and before the expiration of the term of demise the lessors sold the property. The lessee was prevented by injunction from removing the barn. Judgment was given against the lessors for the value of the barn. In that case, however, there was a

249

specific agreement that at the expiration of the lease the lessors would either pay the lessee a fair consideration for the barn or give the lessee a reasonable time within which to remove the same. By selling the farm the lessors rendered it impossible for them to permit the barn's removal. Therefore, under the agreement they were required to pay for it. Here the lessor did nothing in violation of the provisions of the lease, but acted strictly in accord therewith. The case cited is not in point.

The lessees also argue, in support of their alternative allegation in their complaint, that they are entitled to the reasonable value of the addition, constructed by them, as it existed immediately prior to the fire. They contend that under clause 13 of the lease the election as to whether the premises should be rebuilt or the lease should be terminated was solely that of the lessor; hence the lessees on the general principle of equity and justice should be reimbursed for the expenditures made by them. In support of such contention they rely on United States Brewing Co. v. Dolese & Shepard Co., 259 Ill. 274. In that case the lessee agreed to erect and maintain for the term of the lease a certain building as a saloon and boarding house. Such building was erected. The lease also provided that if the lessor terminated the lease before its expiration, or if the district wherein the building was located should become a prohibition district, compensation should be made to the lessee. The district did become a prohibition district, and the suit was brought by the lessee for the compensation provided in the lease. It was held that while the contract was ultra vires, nevertheless, the lessee could recover on the common counts. In the instant case, by the lease, such a duty is not placed on the lessor, nor is there the slightest indication that any benefit was received by the lessor by reason of the construction of the build-

ing. In fact it might have been disadvantageous to the lessor. The addition was probably constructed in furtherance of the special purpose for which the premises were leased. The lessees could have protected their interest by insurance. They had an insurable interest. Ely v. Ely, 80 Ill. 532; Clemson v. Trammell, 34 Ill. App. 414. There is nothing in the record to indicate whether any of the buildings were insured either by the lessor or by the lessees.

The lessees also argue that inasmuch as the term rental for the first five years was $17,100 and under the option for renewal the rental for the next five years would be $27,000, the construction of the addition must be considered as advance rental, since the contemplated cost of the addition, $10,000, approximates the difference between the rentals for the two terms. Such reasoning at the best is rather strained. It would require the spelling out of an implied contract for which there is absolutely no basis, inasmuch as the lessees did not agree that they would construct any addition whatsoever. By clause 22 they were merely given the right to make such construction at their election.

The lessees also rely on Oppenheimer v. Szulerecki, 297 Ill. 81. This was a case involving a lease which provided that in case the demised building should be destroyed by fire the lessor should restore the same, and that in case of the failure of the lessor so to restore the premises, the lessee might, without prejudice to his other remedies, terminate the lease. The building was destroyed. The lessor refused to rebuild and the lessee was compelled to replace the building. The court found that the lessee was entitled to the money so expended. In that case and the other cases cited by the lessees, the decisions are based upon particular contract provisions which are not applicable to the case before us.

251

The judgment of the superior court of Cook county is affirmed.

Judgment affirmed.

ROBSON and SCHWARTZ, JJ., concur.