Johanna GREEMAN, Ruth Krebsbach, Clara Schmidt, E. J. Schmidt, and Robert Schmidt, Plaintiffs and Appellants,

v.

Bernard SMITH and Mary Smith, as Administratrix of the Estate of Paul W. Smith, deceased, Morton County, a Public Corporation, and The State of North Dakota, a Public Corporation, Defendants and Respondents.

No. 8139.

Supreme Court of North Dakota.

Nov. 23, 1965.

Rehearing Denied Dec. 10, 1965.

Milton K. Higgins, Bismarck, for appellants.

C. F. Kelsch, Mandan, for respondent Bernard Smith.

William C. Kelsch, Mandan, State's Atty., for respondent Morton County.

ERICKSTAD, Judge (on reassignment).

This is an appeal by the plaintiffs, Johanna Greeman, Ruth Krebsbach, Clara Schmidt, E. J. Schmidt, and Robert K. Schmidt, from that part of a judgment of the District Court of Morton County in favor of the defendants, Bernard Smith and Morton County, a public corporation. A trial de novo is demanded.

The judgment of the district court quieted title in the plaintiffs, hereafter referred to as Mrs. Greeman, to Section 22, in Township 137, North of Range 80, situated in Morton County, North Dakota, except for certain interests including an easement for public highway purposes in favor of Morton County. Title to all of the accreted land lying adjacent to the east line of Section 22 and extending to the west bank of the Missouri River was also quieted in Mrs. Greeman except for title to the land built by accretion at the former location of Lots 4 and 5 and the accreted land lying east of and adjacent thereto, which was

quieted in Mr. Smith. The judgment awarded $1,800.40 to Mr. Smith for clearing and improving three tracts of land which were part of the land to which title was quieted in Mrs. Greeman and which lies adjacent to and east of the east line of Section 22 north of Lots 4 and 5 of Section 23. The judgment also awarded Mr. Smith the sum of $399.60, which was the rental value received by Mrs. Greeman from Lots 4 and 5 and the land accreted thereto.

The following is a reproduction of the pertinent part of a plat of the original Government Survey of 1884:

Mrs. Greeman alleged in her complaint that she has title to all of Section 22 except for approximately 25 acres located in the northwest quarter and any railroad or highway right of way conveyed by express grant. Mrs. Greeman's title to Section 22 is not in dispute on this appeal.

She further alleged that she is the owner of land built by accretion adjacent to the east line of Section 22, extending to the west bank of the Missouri River, except that area which lies east of a line extending 1,300 feet north from the southeast corner of Section 22 to the west bank of the Missouri River. This excepted area plus 20 additional feet appears on the plat of 1884 as the SW¼SW¼ of Section 23, later described as Lot 5 of Section 23. The tract of land to which title is in issue on this appeal is referred to as Lot 4 and is located east of and adjacent to Section 22, directly north of Lot 5. Mrs. Greeman acknowledges that Lot 4 was in existence as riparian land lying between Section 22 and the west bank of the Missouri River at the time of the surveys of 1884 and 1899 and that the part of Section 22 lying adjacent to and west of Lot 4 was originally nonriparian land.

Mrs. Greeman contends that sometime between the survey of 1899 and 1933, the year that Mr. Smith took possession of Lot 4, the Missouri River moved westward, so that all of Lot 4 and the north 20 feet of Lot 5 were lost by erosion, whereby that part of Section 22 lying adjacent to Lot 4 and part of Lot 5 became riparian; and that thereafter the Missouri River moved eastward and land was rebuilt by imperceptible degrees to Section 22, extending over the area formerly occupied by Lot 4 and the north 20 feet of Lot 5.

■ The trial court found that the evidence did not support Mrs. Greeman's contention that Lot 4 had been completely lost by erosion and thereafter had been rebuilt by imperceptible degrees as accretion to Section 22. Although Mrs. Greeman has strongly urged this contention in her brief,

we believe that the case of Perry v. Erling, which was decided by this court after the case now before us was submitted to us, is controlling and that it is unnecessary to consider this contention further since it is now immaterial that this may have occurred. The rule set forth in Perry is as follows:

Where land which was riparian at the time of the original survey is lost by erosion, so that nonriparian land becomes riparian, and land is thereafter built by accretion to the land which was originally nonriparian, extending over the location formerly occupied by the original riparian land, the owner of the land which was originally nonriparian has title only to the accreted land within the boundaries of the formerly nonriparian tract; and all other land so accreted, extending over the area formerly occupied by the land of the original riparian owner, becomes the property of the owner of the original riparian land.

Perry v. Erling, 132 N.W.2d 889, Syllabus 1 (N.D.1965).

■ In the instant case Mr. Smith received a patent from the United States Government to Lots 4 and 5. Lot 4 was riparian according to the original survey of 1884. Lot 5 was riparian according to the survey of 1899. Applying the rule in Perry, we find that the title to Lot 4 and the accretion to it was properly quieted in Mr. Smith.

■ Mrs. Greeman also contends, among other things, that Mr. Smith should not have been awarded a judgment for improvements made on the land accreted to Section 22, the title to which was quieted in her.

The record discloses that Mr. Smith made improvements on the land accreted to Section 22, perhaps as early as 1933. It is significant to note, however, that most of the improvements were made between 1941 and 1956, during which period Mr. Smith

leased Section 22 from Mrs. Greeman. The improvements consisted mainly of clearing and cultivating the land and of planting alfalfa thereon.

The trial court found that Mr. Smith made the improvements in good faith without color of title. Section 32-1708, N.D.R.C. of 1943 (now § 32-17-08, N.D. C.C.), provides, however, that a counterclaim for improvements in a quiet title action may be advanced only by one who has made improvements on land in good faith while holding the land adversely under color of title. The pertinent part of the statute reads as follows:

> In an action to determine adverse claims, a defendant in his answer * * * may set forth his rights in the property as a counterclaim and may demand affirmative relief against the plaintiff and any codefendant, and in such case he also may set forth a counterclaim and recovery from plaintiff or a codefendant for permanent improvements made by him or those under whom he claims, holding under color of title in good faith adversely to the plaintiff or codefendant against whom he seeks a recovery. * * *

North Dakota Revised Code of 1943.

There is no evidence indicating that Mr. Smith held the accreted land under color of title when he made the improvements.

The syllabus in a case decided by this court in 1911 contains the following language:

> A claim for betterments to realty by permanent improvements made thereon is not established by proof of the placing of permanent improvements on the real property of another under no claim, right or title thereto; nor can the purchase, several years thereafter, of a void but purported title, under which to claim color of title to such realty, permit the allowance of such a claim for betterments, under the

provisions of section 7526 of the Code [now § 32-17-08, N.D.C.C.]. * * *

McKenzie v. Gussner, 22 N.D. 445, 134 N.W. 33, 37 L.R.A.,N.S., 918.

The Supreme Court of the United States, in affirming a decision of the Supreme Court of Dakota which denied a recovery for improvements made on land which was not held under color of title, said:

> * * * It is asserted, under a statute of the Territory, which provides that "in an action for the recovery of real property upon which permanent improvements have been made by a defendant, or those under whom he claims, holding under color of title, adversely to the claim of the plaintiff, in good faith, the value of such improvements must be allowed as a counterclaim by such defendant." The case presented by the defendant is not covered by the provisions of this law. There can be no color of title in an occupant who does not hold under any instrument, proceeding, or law purporting to transfer to him the title or to give to him the right of possession. And there can be no such thing as good faith in an adverse holding, where the party knows that he has no title, and that, under the law, which he is presumed to know, he can acquire none by his occupation. * * *

Deffeback v. Hawke, 115 U.S. 392, at 407, 6 S.Ct. 95, at 102, 29 L.Ed. 423.

We therefore conclude that, as the improvements were not made while holding possession under color of title, Mr. Smith cannot recover therefor.

■ Mr. Smith also alleged that he had acquired title to the accreted land which he improved by adversely possessing it for the statutory period. The allegation is untenable. The accreted land which Mr. Smith claims by adverse possession is appurtenant to Section 22. As the land accreted to Section 22 was not specifically

excepted from the lease to Section 22 which Mr. Smith obtained from Mrs. Greeman in 1941, it became subject to the lease. Unless an instrument shows a contrary intention, accretion is included in any description of land to which it is appurtenant. See: 1 Patton, Titles § 161 (2d ed. 1957); 2 Patton, Titles § 304 (2d ed. 1957); Jefferis v. East Omaha Land Co., 134 U.S. 178, 10 S.Ct. 518, 33 L.Ed. 872; Wemmer v. Young, 167 Neb. 495, 93 N.W.2d 837; Mulhall v. State, 140 Neb. 341, 299 N.W. 481. We apply the same rule to an oral lease.

Section 28–0112, N.D.R.C. of 1943 (now § 28-01–12, N.D.C.C.), raises a presumption against adverse possession by a tenant. The statute reads as follows:

> 28–0112. Possession of Tenant Presumed To Be Possession of Landlord; When. Whenever the relation of landlord and tenant shall have existed, the possession of the tenant shall be deemed the possession of the landlord, until the expiration of twenty years from the termination of the tenancy, or, when there has been no written lease, until the expiration of twenty years from the time of the last payment of rent, notwithstanding that such tenant may have acquired another title or may have claimed to hold adversely to his landlord. Such presumptions shall not be made after the periods herein limited.

North Dakota Revised Code of 1943.

■ This court has had occasion to construe the statute:

> As we construe that statute it means that when the relation of landlord and tenant shall have existed the continued possession of the land by the tenant thereafter shall be presumed to be the possession of the landlord until the expiration of 20 years from the termination of the tenancy or the last payment of rent, even if the tenant has

acquired some other title to the property adverse to the landlord. Continued possession by the tenant beginning with the lease is presumed. * * *

Wilson v. Divide County, 76 N.W.2d 896, at 899 (N.D.1956).

Evidence introduced is insufficient to rebut the presumption raised by the statute.

■ There is no evidence that Mrs. Greeman had agreed to reimburse Mr. Smith for any improvements he made or that she had requested him to make improvements. Many courts have recognized the necessity of such an agreement before allowing a tenant to recover for improvements made on the landlord's property. The Supreme Court of North Carolina has stated the rule as follows:

> In the absence of any agreement between the parties there is no obligation on the part of the lessor to pay the lessee for improvements erected by the lessee upon the demised premises, though the improvements are such that by reason of their annexation to the freehold they become a part of the realty and cannot be moved by the lessee.

Brown v. Ward, 221 N.C. 344, 20 S.E. 2d 324, at 326.

See also: Grizzle v. Runbeck, 74 Ariz. 92, 244 P.2d 1160; In re Logan's Estate, Ohio Prob., 131 N.E.2d 454; Lewis v. Real Estate Corporation, 6 Ill.App.2d 240, 127 N.E.2d 272; Wilson v. Watt, 327 S.W. 2d 841 (Mo.1959); Miller v. Miller, 217 Miss. 650, 64 So.2d 739, 38 A.L.R.2d 674; Haywood v. Briggs, 227 N.C. 108, 41 S.E. 2d 289, 171 A.L.R. 480.

■ Under these circumstances, Mr. Smith cannot recover for any of the improvements made on Mrs. Greeman's accreted land.

Mrs. Greeman's final contention is that the trial court erred in holding that Morton County is entitled to an easement for highway purposes following the east line of Section 22 as that line is projected north over the accreted land to the west bank of the Missouri River. She asserts that the easement should run north from the southeast corner of Section 22 to the boundary line separating her accreted land in Section 23 from Mr. Smith's property in Section 23, extending diagonally along this boundary to the west bank of the Missouri River.

The trial court cited § 47–0605, N.D.R.C. of 1943, in support of its holding:

> 47–0605. Riparian Accretions. Where from natural causes land forms by imperceptible degrees upon the bank of a river or stream, navigable or not navigable, either by accumulation of material or by the recession of the stream, such land belongs to the owner of the bank, subject to any existing right of way over the bank.

North Dakota Revised Code of 1943.

The trial court's interpretation of the statute is supported by the following language in State v. Yates:

> But the state contends that as far and as fast as the ground in front of high-water mark as it was in 1871 has been added to by accretion, so far and so fast has the public easement extended seaward by operation of law, that the definite terminus of the street in 1871 was "high-water mark," and that it continued to be and is now at "high-water mark," wherever that may be. In short, it is contended that the end of the street has kept pace with the receding high-water mark * * *. We think that this contention must be sustained.

State v. Yates, 104 Me. 360, 71 A. 1018, at 1019, 22 L.R.A.,N.S., 592.

See also: Hathaway v. City of Milwaukee, 132 Wis. 249, 111 N.W. 570, 112 N.W. 455, 9 L.R.A.,N.S., 778.

 We believe that the easement on the east line of Section 22 has been extended by accretion in a northerly direction from the point where the section line terminated at the time of the original survey to the point where the section line, if extended due north, would now intersect the west bank of the Missouri River.

The judgment of the district court is affirmed except for that part which awarded Mr. Smith $1,800.40 for improvements. The case is therefore remanded with instructions to the district court to modify the judgment, consistent with the views expressed in this opinion.

BURKE, C. J., and STRUTZ and TEIGEN, JJ., concur.

KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.